### W. T. WATT v. T. C. HUNTER.

Decided December 21, 1898.

#### 1. Vendor and Vendee—Contract Construed.

In an executory contract for the sale of land, the vendee, in part consideration, assumed payment of existing incumbrance which he was to have renewed and extended before receiving a deed, but for the purpose of such extension and renewal the title was to be vested in him. Held, that such agreement authorized the vendee to execute a new mortgage on the land, having priority over the claim of his vendor, to discharge such incumbrance.

#### 2. Same—Performance—Reasonable Time.

Under such contract the vendee, who had received possession, was bound to provide for the debt in question within a reasonable time (which three months was held to be); and interest accruing upon it after such time could not be taken as a part of the incumbrance discharged, which he was entitled to deduct from the entire price agreed on with his vendor.

#### 3. Same.

See decree adjusting the terms on which vendee was to comply with his contract, held to be reasonable in requiring him to complete the adjustment of the incumbrance within sixty days, and allowing him to create a new debt running five years, in order to do so.

#### 4. Same.

See provision in said decree attempting to save the rights of persons not parties, who might have previously contracted with the vendee, held to be improper.

#### 5. Vendor and Vendee—Performance—Improvements.

A vendee asserting his readiness and willingness to perform the contract, and being permitted by the decree to do so, can not complain of a refusal to find the value of improvements to be allowed him in case the vendor recover back the land.

**6. Same—Adjustment of Incumbrance—Attorney's Fees.**

Where the incumbrance which a vendee undertook to discharge contained no provision for attorney's fees upon the note secured, it was improper, in adjusting by decree the terms on which he should be permitted to comply, to require him to provide for a sum as attorney's fees on such note.

ON MOTION FOR REHEARING.

**7. Practice on Appeal—Finding Facts.**

The Court of Civil Appeals can make no finding on conflicting testimony upon an issue of fact not passed upon in the trial court.

**8. Trespass to Try Title—Improvements—Rents—Offset.**

Defendant in trespass to try title having been adjudged entitled to specific performance, on equitable terms, of an executory contract of sale under which he had possession, the appellate court could not, in the absence of a finding thereon by the trial court, ascertain the rental value of the lands and award a recovery therefor to plaintiff in case defendant failed to perform the requirements of the decree. The judgment in such case will be without prejudice to plaintiff's rights to afterwards sue for recovery of such rents, or the right of defendant to offset the value of improvements made by him.

APPEAL from Falls. Tried below before Hon. SAM R. SCOTT.

*J. R. Downs* and *Z. I. Harlan,* for appellant.

*Clark & Bolinger* and *Martin & Eddins,* for appellee.

KEY, ASSOCIATE JUSTICE.—May 20, 1897, appellant brought this suit in trespass to try title to recover from appellee a tract of land in Falls County. The defendant pleaded the general issue, and also interposed a special plea alleging that prior to the appellant's acquiring the land from one E. J. Gurley, defendant had made a contract with said Gurley for the purchase of the land. The plea sets forth specifically the terms of the contract, alleges that the defendant immediately took possession of the land, and up to the time of trial had made valuable improvements thereon, to the extent of $8799.14.

He also alleged that the agents of E. J. Gurley prevented him from procuring the money to discharge the Gurley debt, hereinafter referred to. This pleading requests the court to fix the amount of the Gurley debt to be paid by defendant within such time as the court might designate; and to also fix the amount, times of payment, etc., of the remainder of the consideration, as stipulated in the contract between Gurley and defendant. This pleading, in terms and effect, asks the court to construe and enforce the contract referred to, and also prayed for general and special relief.

The plaintiff filed a supplemental petition, embracing exceptions and a general denial, and by way of replication alleged that the defendant had failed to comply with the terms of the contract between him and Gurley, charging, in effect, that the defendant had forfeited his rights under the contract. This pleading is voluminous, but asserts that the plaintiff is still willing to carry out the contract between Gurley and the defendant,

and concludes as follows: "Therefore, plaintiff prays the court that upon final hearing hereof for a decree requiring said Hunter to pay into court' the said sum due on said mortgage, interest, charges, and attorney's fee, and all costs of this suit, and to execute and deliver to plaintiff the notes, as provided for in said contract. Plaintiff further prays that in the event said Hunter fails or refuses to comply with such order of the court, that he have his decree rescinding said contract of sale between said Gurley and Hunter, for the restitution of said land and for his damages, and have his judgment against the sureties on defendant's bond, and for all his damages and cost in this behalf expended, and for all such other, different, and further relief, either in law or in equity, to which he may be entitled by reason of the premises."

It is not specifically averred, in the pleading of either party, that the note executed by Gurley and secured by the mortgage stipulated for 10 per cent, or any other sum, as attorney's fee, if placed in the hands of an attorney, etc.; but in stating the conditions upon which he offers performance of the Gurley contract, the plaintiff asks that the defendant be required to "pay the amount due on the Silliman mortgage, including $50 paid for an extension of time, as above set out, and also including 10 per cent additional on the amount of the principal and interest shown to be due on said note, as attorney's fee."

The court below held that Hunter had not forfeited his rights under the Gurley contract, and undertook to decree specific performance of said contract, substituting appellant Watt for Gurley. This decree is complained of by both parties; but appellant has filed a motion, asking that appellee's cross-assignments of error be stricken out and disregarded, upon the ground that the cross-assignments are not contained in the transcript and appear only in appellee's brief, and a copy of the brief is not shown to have been filed in the court below as required by rule 101. Appellee's brief was filed in this court November 1, 1898. The case was submitted on brief for both parties November 9, 1898, and the motion complaining of appellee's brief was not filed until November 16, 1898. The filing of appellee's cross-assignments in the court below could be waived by appellant; and, therefore, the motion objecting to their consideration on that ground, not having been filed before the case was submitted, comes too late and must be overruled. (Rule 8 for the Courts of Civil Appeals.) Besides, as appellant's brief points out reversible error, and as there is nothing requiring the cause to be remanded for another trial, it is the duty of this court, not only to correct the errors pointed out by appellant, but to render such decree as the court below should have rendered. Rev. Stats., art. 1027.

The contract between Gurley and Hunter reads as follows:

"The State of Texas, County of Falls.—This memorandum agreement witnesseth:

"1. That E. J. Gurley sells to C. T. Hunter nineteen hundred and fifty-six acres of land on the west bank of the Brazos River, in Falls County, beginning at the S. W. corner of a tract of 258½ acres of land

sold to Scoggins, on the bank of the river; thence with Scoggins' line N. 56½ W. 455 vrs.; thence N. 30 W. 676 vrs. to Scoggins' N. W. corner; thence N. 60 E. 696 vrs. to the S. W. corner of Martin Buckley's tract; thence N. 30 W. 1347 vrs. to Martin Buckley's N. W. corner in the Mc-Kissack line; thence S. 60 W. 3442 vrs. to the N. E. corner of the J. Jones survey of 2000 acres; thence S. 28½ E. 3820 vrs. to a stake for corner; thence N. 60 E. 534 vrs. to the N. W. corner of a tract of 50 acres sold to Eliza Sharon on the bank of Cow Bayou; thence meandering Cow Bayou, to the Brazos River; thence up the Brazos River, with its meanders, to the place of beginning, containing 2047 7-10 acres, excepting 91⅓ acres undivided interest now belonging to the Puckett heirs.

"2. That said Hunter is to pay fifteen dollars per acre for said land, with ten per cent interest from January 1, 1897.

"3. Whereas, there is now a deed of trust or mortgage on said land, held by C. H. Silliman, of Fort Worth, Texas, upon which there is a balance of nearly nine thousand dollars past due. Now, therefore, as a part of the purchase money for said land, the said Hunter assumes said debt, and agrees and binds himself to pay off and fully discharge the same, and for the amount so assumed and paid by said Hunter, he shall be entitled to and shall receive a credit upon the amount of the purchase money he is to pay to said Gurley. For the purpose of renewing and extending said loan and mortgage, it is agreed and understood that the title to said land shall be vested in said Hunter, and the said Gurley hereby expressly agrees and consents to such renewal and extension and authorizes the said Hunter to make the same.

"4. So soon as said mortgage is renewed and extended, as above provided, this transaction shall be closed by the said Gurley executing to said Hunter a good and valid warranty deed for said land, and the said Hunter shall execute his notes in the usual bankable form for the purchase money due said Gurley, as follows:

"Note due January 1, 1899, for $3000, with 10 per cent interest after maturity; note due January 1, 1900, for $1000, with 10 per cent interest after maturity; note due January 1, 1901, for $1000, with 10 per cent interest after maturity; note due January 1, 1902, for $1000, with 10 per cent interest after maturity; note due January 1, 1903, for $6000, with 10 per cent interest after maturity.

"The five foregoing notes are given for the interest due said Gurley from the 1st day of January, 1897, to the 1st day of January, 1903, on the balance of the purchase money due said Gurley, after deducting the amount of said renewed loan from the whole amount of the purchase money. Said balance of purchase money being approximately $20,000, shall be divided into ten equal annual payments, for which the said Hunter shall execute his notes, the first and twelve months interest being due and payable January 1, 1904, and the interest on the balance of said purchase money due said Gurley shall be paid annually at the rate of 10 per cent per annum, on the 1st day of January of each year until the whole amount of the purchase money and interest is paid.

"5. Unless some difficulty should necessarily prevent the carrying out of this contract, the said Hunter agrees to begin work on said land about November next, and to put as much of it into cultivation as he can for the next year, and to continue improving said land and cultivating the same until the purchase money is all paid, thereby making the land more valuable, and the better securing the payment of all of the purchase money notes.

"6. The survey made by Ed. Pierson (the field notes of which are copied above), and by which we are governed in estimating the number of acres specified in this contract, is to be corrected, if it is found to be incorrect in any material respect.

"7. The said Gurley agrees and binds himself to pay all back taxes due on said land, and covenants that the title to said land is perfect in him; that he has good right to convey the same, and that there are no incumbrances on said land. Should it hereafter appear that such is not the case the said Gurley binds himself to perfect said title, and to remove such incumbrances (save and except the Silliman mortgage above referred to), and in case he fails to do so within a reasonable time after notice from said Hunter, the said Hunter may, at his option, abandon this contract or perfect said title and remove said incumbrances at the cost and expense of said Gurley.

"Witness our hands in duplicate, this 25th day of September, 1896.

"E. J. Gurley,<br>"C. T. Hunter.

"Witness:    J. A. Martin,
              "E. M. Eddins."

The testimony shows that Gurley borrowed $12,000, for which sum he executed his promissory note, dated March 28, 1888, payable December 1, 1893, to the order of the Land Mortgage Bank of Texas, Limited, with interest at the rate of 9 per cent per annum until maturity, and thereafter, until paid, at the rate of 12 per cent per annum; said interest payable semi-annually on the first days of December and June of each year, according to the tenor of eleven interest coupons thereto attached, all with current rate of exchange on New York. The note is not copied in the statement of facts. The description above given is contained in the mortgage executed by Gurley and wife to secure the note. The statement of facts, after copying the mortgage, says: "Plaintiffs also introduced the promissory note described in the above deed of trust, being the note known as the Silliman note; said promissory note being indorsed on the back thereof as follows: $585 interest paid on within note Nov. 5/95. $100, int. paid on within note Dec. 16/95. $3500, int. paid on within note October 31/96. $2500, paid on acct. principal of within note October 31/96. Without recourse. Land Mortgage Bank of Texas, Limited, by C. H. Silliman, Agt. & Manager."

We find no testimony in the record showing that the note stipulated for the payment by Gurley of anything as attorney's fee. The testimony

indicates, and we find, that the interest coupons had all been paid. No other payments were shown, except those shown by the indorsements on the back of the note; and these were made by Gurley.

It was also shown by the undisputed testimony that Silliman, acting for the Land Mortgage Bank, was pressing Gurley for payment of the note at the time he and Hunter entered into the contract set out above. It also appears that Gurley knew at that time that Hunter contemplated raising the money to discharge the Gurley mortgage, by mortgaging the land to someone else; and the testimony shows that after the contract was made, Gurley's agents, acting for him in reference to the matter, acquiesced in Hunter's efforts to mortgage the land.

There is no direct testimony showing that Hunter was unable to discharge the Gurley mortgage without incumbering the land, but the circumstances indicate that such was the fact. Hunter was diligent in his efforts to secure the money by mortgaging the land, but failed to do so, until August, 1897, when he executed a mortgage to Francis Smith & Co. for $11,500, reciting that the beneficiaries were subrogated to the rights of the beneficiaries in the Gurley mortgage.

It was shown that the attorney in whose hands the Gurley mortgage had been placed for collection continued to urge payment, and that in November, 1896, he threatened to institute suit unless a payment was made; that Hunter had notice of these facts, and did not pay the Gurley mortgage nor attempt to procure any further extension thereof.

In the latter part of December, 1896, Gurley's agent contracted to sell the land to Watt, who had notice of Hunter's rights under his contract with Gurley. Watt paid the attorney holding the Gurley mortgage a bonus of $50, and thereby procured an extension until January 20, 1897. January 18, 1897, Watt paid off the Gurley mortgage and the note was delivered to him, with the indorsement thereon, as above stated.

In April, 1897, Watt brought suit against Hunter on the Gurley note, which suit has been dismissed. In February, 1897, Gurley, acting by his duly authorized agent, conveyed the land in controversy to appellant Watt, and the deed of conveyance was duly recorded on the 6th day of March, 1897. The testimony indicates that the action of Gurley in selling the land to Watt, and of Watt in purchasing the land and disputing Hunter's right thereto, militated against Hunter's efforts to mortgage the land to secure the money to pay the Gurley debt. But it does not appear that this interference occurred prior to January, 1897.

Hunter adduced evidence which will support the averments in his pleading in reference to the improvements made by him upon the land; and in August, 1897, he tendered Watt $11,500, upon condition that Watt recognize and concede that the mortgage to Francis Smith & Co. was prior to his right as vendor.

The land was resurveyed, and found to contain 1818½ acres, which at $15 per acre, the price stipulated in the contract, made the total consideration for the land $27,277.50.

Vol. XX. Civil—6

With this statement of the material facts, the questions of law involved in the case will be considered; other incidental facts, perhaps, being referred to in the course of the opinion.

Preliminary to such consideration, it is proper to state that whether or not Hunter, by his failure to pay off and discharge the Gurley mortgage, had forfeited his right to hold the land under the contract between him and Gurley, is a question that does not arise in the case, because both the parties in their pleading ask the court to construe and enforce the contract; the difference between them being as to its meaning and effect, the appellant contending, among other things, that it does not authorize appellee to execute a new and prior mortgage on the land, for the purpose of discharging the Gurley debt.

This question is presented by appellant's first assignment of error, under which he submits but one proposition, which is, that when a stipulation in a contract is plain and unambiguous, there is no room for construction, and the parties have the right to insist upon the letter of the contract.

The correctness of this proposition may be conceded, but it does not follow that error was committed in the respect charged. The clause in the contract authorizing Hunter to renew and extend the loan, is not free from ambiguity. It does not necessarily mean, as contended by appellant, that Hunter was only authorized to renew or extend the note and mortgage executed by Gurley, the one to the Land Mortgage Bank of Texas as payee, and the other to C. H. Silliman, as trustee. If Gurley was to be bound by the new contract for the renewal and extension of the loan, then it was unnecessary that title to the land should be vested in Hunter, in order to secure such result; but the clause of the contract referred to stipulates that, "for the purpose of renewing and extending said loan and mortgage, it is agreed and understood that the title to said land shall be vested in said Hunter; and the said Gurley hereby expressly agrees and consents to such renewal and extension, and authorizes the said Hunter to make the same."

This language is susceptible of the construction that Gurley intended to authorize Hunter, either to make an arangement with Silliman for an extension of time on the Gurley note and mortgage, or to execute to some other person or corporation a new note and mortgage, not signed by Gurley, but having the same priority as the former mortgage.

Under the contract, it is not denied that Hunter had the right to procure an extension of the note and mortgage, as they then existed, with the party then holding them, and that, when so extended, the mortgage would still have priority over Gurley's rights as a vendor; and it would be no greater disadvantage to Gurley for Hunter to execute another mortgage to secure some other person to furnish the money to discharge the Gurley debt. Such a transaction would merely transfer the prior right held by the Land Mortgage Bank and Silliman to some other person.

As before said, we think there is ambiguity in the contract; and, construing the same in the light of the circumstances then existing, we be-

lieve that Gurley intended to authorize Hunter to execute a different and prior mortgage, to any person who would advance the money to discharge the Gurley debt.

The second and third assignments complain of the action of the court in calculating interest on the Gurley debt, up to the date of the decree, January 19, 1898, in determining the amount for which Hunter was authorized to mortgage the land, and the remainder of the consideration owing by Hunter for the purchase of the land.

These assignments are well taken, and require a reversal of the judgment.

The contract contemplated that Hunter should have immediate possession of the land; and he alleged in his pleading, and the testimony shows, that he immediately took possession of it; and he has had the possession and use of it ever since. More than three months elapsed from the time of the making of the contract to January 1, 1897; and, while the contract does not fix the time within which Hunter was to pay off or procure an extension of the Gurley mortgage, the law required him to do so within a reasonable time; and, under the circumstances disclosed by the record, we think the 1st of January, 1897, was a reasonable time. Besides, the contract stipulates that Hunter shall pay interest from January 1, 1897, which tends, to some extent, to show that it was expected that the matter would be closed up at or about that time. Furthermore, Hunter has had the use and benefit of the land from the time the contract was made, free from charges for rent; and, therefore, it would be unjust to count up the interest for more than fifteen months after the contract was made, and deduct the amount of the principal and interest so ascertained, from $27,277.50, the total consideration, to ascertain the balance of the purchase money. Under such process, the further the time for computing interest is extended, the less will be owing on the balance of the consideration. It would be unjust to Watt to allow Hunter the use of the land, and, at the same time, credit for interest on the Gurley debt, which he had agreed to pay. In determining the balance of the purchase money, and the amount for which Hunter was authorized to create a prior mortgage on the land, interest on the Gurley debt should be computed up to the time allowed Hunter to pay off or extend the debt; which, under the circumstances shown, should not have extended beyond January 1, 1897.

The decree allows Hunter sixty days from its date within which to mortgage the land to secure the money to pay off the Gurley mortgage; and authorizes him to create a debt, due five years from date and bearing 10 per cent interest. We see no just ground for complaint against this portion of the decree. The contract does not limit the time to which the loan might be extended, and we do not think the limitation imposed in the decree was unreasonable. Hence, appellant's fourth assignment of error will be overruled.

Appellant's fifth and last assignment complains of so much of the decree as declares that it shall not be construed as in anyway interfering with any contract which Hunter may have heretofore made with any per-

son or corporation, for the payment or extension of the Gurley debt. We think it was improper to place any such provision in the decree. It may be true that it would not be binding upon appellant, as against anyone not a party to this suit, but it was evidently intended to bind him, and might have the effect of prejudicing his title to the land.

Appellee presents three cross-assignments of error, complaining of the action of the court (1) in not determining the value of the improvements placed by appellee on the land, and in refusing to provide in the decree that, in the event he should fail to secure the money necessary to pay the Gurley mortgage, appellant should pay him for the value of the improvements before recovering the land; (2) that the decree should have authorized him to create a mortgage debt on the land running for a longer period than five years; and (3) that error was committed in requiring appellee to pay appellant the sum of $1093 for attorney's fee.

In reference to the first of these questions, it is sufficient to say that appellee in his pleading and evidence asserted his readiness and willingness to have the contract enforced in all its terms; and for this reason, if no other, we do not think he was entitled to the relief referred to.

The second question has already been discussed in considering appellant's fourth assignment of error, and need not be further adverted to. The action of the court, in the respect referred to, it seems to us, was fair and reasonable.

The third cross-assignment points out error, and will be sustained. As above stated, it was not directly averred in the pleadings of either party that the Gurley note contained a stipulation for attorney's fee; nor does the testimony incorporated in the statement of facts show any such stipulation. Besides, this suit is not founded upon the note, and, if such stipulation had been shown, there would be no equitable reason for requiring appellee to pay such attorney's fee, unless the testimony showed that appellant had been compelled to pay the same when he took up the Gurley note. It may be, if the note contained a stipulation requiring the payment of a given per cent as attorney's fee, and if the right to collect the fee had accrued when appellant became the owner of the note, that he could, by proper averments in his pleading, have recovered such attorney's fee. But such is not the state of the record.

The decree of the District Court will be set aside, and a decree here rendered for specific performance of the contract, in accordance with the views herein expressed, requiring Hunter to pay off the Gurley-Silliman debt and the $50 paid by Watt for an extension thereof; to execute promissory notes for the remainder of the purchase money of the land; authorizing Hunter to mortgage the land, creating a lien prior to Watt's rights as vendor, to secure money to pay the prior debt; and requiring Watt to deed the land to Hunter. The general outlines of the decree will be similar to the decree of the court below; and will allow sixty days after the mandate is filed in that court for performance. The costs of the appeal will be taxed against appellee Hunter.

*Reversed and rendered.*

OPINION ON MOTION FOR REHEARING.

KEY, ASSOCIATE JUSTICE.—Appellant has filed a motion for rehearing, asking this court to find the rental value of the land in controversy, and to so reform the decree rendered as to permit him to recover such rental against appellee and the sureties upon his replevy bond, in the event appellee fails to pay for the land in accordance with the terms of the decree.

There are two reasons why this motion should be refused. In the first place, there is conflict in the testimony as to the amount of land in cultivation, and as to the rental value per acre, and the trial court made no finding of fact thereon. In the second place, Hunter has made valuable improvements upon the land, and as this is an equitable proceeding, we are not prepared to hold that the value of such improvements should not be offset against the rent. However, the motion in question will be overruled and the decision of this court made final, without prejudice to appellant's right to sue upon the replevy bond, in the event appellee fails to pay for the land; and also, without prejudice to appellee's right to set up as a defense to such suit the enhanced value of the land, resulting from improvements made thereon by him.

*Motion overruled.*

Delivered February 8, 1899.