## BROWN *v.* AVERY.

1. TAX TITLES—WHO MAY ACQUIRE—MORTGAGES.

A purchaser of land under a contract providing for the payment by him of taxes thereafter assessed, who assumes, as part of the purchase price, a mortgage containing covenants of warranty and an undertaking to pay all taxes, and who arranges with the mortgagee for an extension of the time of payment, cannot, in a foreclosure suit, set up a subsequently-acquired tax title to defeat the mortgage, although the taxes were delinquent at the time of his purchase.

2. SAME—ESTOPPEL.

A mortgagee who, at the time of granting an extension to one who assumed the mortgage upon purchase of the property, represented in good faith that the taxes were all paid, is not thereby estopped from enforcing his mortgage as against a tax title subsequently acquired by the purchaser, and based upon an existing unpaid tax; at least, not further than as to the amount paid for the title.

Appeal from Genesee; Wisner, J. Submitted January 24, 1899. Decided February 21, 1899.

Bill by Charles S. Brown and David Richards, executors

of the last will and testament of Benjamin Cotharin, deceased, against Charles R. Avery, Debbie J. Avery, and Edgar J. Osband, to foreclose a mortgage. From a decree for complainants, defendants appeal. Affirmed.

*James H. McFarlan*, for complainants.

*Black & Brown*, for defendants.

HOOKER, J. Robert E. Wade and wife, Belle F. Wade, held the original title to the land in question. On September 16, 1890, they made a mortgage thereon to Cotharin, complainants' testator. On April 28, 1896, Robert E. Wade and Debbie J. Avery executed a contract, by the terms of which the latter and her husband agreed to purchase, and the former and his wife to sell, the premises for the sum of $600, and to pay all taxes that should be thereafter assessed. It was agreed that Avery should have immediate possession of the premises. Mrs. Wade did not sign the contract, though she was described in it as a party to it, and it is claimed that it was made with her assent, which seems undisputed. On the same day, Wade and wife executed a warranty deed of the premises to the Averys, which was held by Theodore J. George in escrow, to be delivered on payment of $200, George having negotiated the sale. This was subject to the mortgage given to Cotharin, which was according to the arrangement between the parties. He extended the mortgage five years, at the request of the Averys, who took immediate possession of the premises, and have occupied them since. December, 1896, Middleton bought a tax title upon the premises, the same having been bid in by the State for the tax of 1893, and on December 10, 1896, the Averys were informed of his purchase. In April, 1897, a deed was made from the auditor general to Middleton, who on May 14, 1897, conveyed his title to the Averys for $25. Subsequently Avery and wife mortgaged the premises to Osband. Cotharin's executors filed the

bill in this cause to foreclose the mortgage held by them, making the Averys and Osband parties. A decree was rendered for the complainants, and the defendants have appealed.

It was shown that none of the parties to the contract knew of the unpaid tax of 1893 until after Middleton bought it, and that Mrs. Avery called upon Cotharin, when she bought the place, for an abstract, having learned that he had one. He said that he had it, but did not have time to get it; that it was all right. Subsequently she called to get him to extend the mortgage, which he did. She then said she was going to the court-house, to see if there was anything back on the place, and he said there was not, and she believed him. He said the taxes were all paid, and he would guarantee the title absolute, with the exception of the mortgage. The papers were drawn the next day. Before Middleton took his deed, he informed the Averys that he had bought the tax title, and that it would cut off their interest.

The defendants contend:

1. That they are not proper parties, inasmuch as, by a purchase of the tax title, they hold a distinct, adverse, and paramount title to that of the mortgagor.

2. That the Averys succeeded to Middleton's title, which was absolute, and, as they did not agree to pay the back tax, they were not estopped from purchasing the outstanding tax title, which had extinguished the former title held by Wade.

3. That the representations and guaranties of Cotharin that there were no liens against the property preclude complainants from claiming under Wade's title through the mortgage.

The mortgage given by Wade to Cotharin contains covenants of warranty, and an undertaking to pay all taxes. The defendants Avery purchased the equity of redemption, and the payment of the mortgage was a part of the agreed purchase price. They took possession under the arrangement. In addition to this, they arranged with Cotharin for an extension of the time for the payment of

his mortgage. Thus, they were under contract obligations with the Wades, if not with Cotharin, to assume this mortgage and perform its conditions. In equity they would be held primarily liable for the debt, and a decree for deficiency would be entered against them. Were the mortgagor, Wade, attempting to make this defense, it would be said that his purchase of the outstanding tax title was the performance of a duty which he owed to the mortgagee, and there is force in the claim that these defendants are in the same position. Several cases cited by counsel recognize a duty of this kind growing out of the relations of the parties, and the application of the rule is not confined to cases where the person taking the tax title owes the duty of payment to the State. Thus, in *Fells* v. *Barbour*, 58 Mich. 49, it was held that an execution purchaser of the equity of redemption owed to a prior mortgagee the duty of payment of taxes, and that a purchase of tax titles amounted to payment. The same is true of a grantee or second mortgagee. *Connecticut Mut. Life Ins. Co.* v. *Bulte*, 45 Mich. 113. The court said in the latter case that:

"It is conceded that there are a great many cases in which parties standing in particular relations to the land, or to the owner or other person interested therein, are not suffered to acquire tax titles and rely upon them as against other claimants. Some of those are very plain, and it is quite unnecessary to do more than name them. A tenant, for example, who has covenanted to pay the taxes, cannot be suffered to neglect this duty, and then acquire a tax title which shall cut off the title of his landlord. Neither shall the purchaser in possession under an executory contract be allowed to cut off the rights of his vendor by a like purchase, nor a mortgagor that of his mortgagee. A tax purchase made while such a relation exists is made in wrong, and the law, in circumvention of dishonesty, will conclusively presume that it was made in the performance of duty, and not in repudiation of it."

See, also, *MacEwen* v. *Beard*, 58 Minn. 176; *Allison* v. *Armstrong*, 28 Minn. 276 (41 Am. Rep. 281); *Washington, etc., Trust Co.* v. *McKenzie*, 64 Minn. 273;

*Avery* v. *Judd,* 21 Wis. 262; *Horton* v. *Ingersoll,* 13 Mich. 409.

But, as already stated, the obligation of the Averys does not rest alone upon their relation to their vendor, and through him to Cotharin, but they are under contract obligations with both of them to perform the contract of warranty and to pay the taxes, as contained in the mortgage. This was, in effect, an agreement to pay the back tax, and any purchase inures to the benefit of the complainants.

The claim that complainants should be estopped by Cotharin's statement to Mrs. Avery that the title was absolute, except as to the mortgage, possesses little merit. His representation was honestly made, and, even if it were to be held to be a guaranty, it would affect his claim only to the extent of $25, the amount paid for the title. But defendants have not paid in full the amount due the Wades, to whom they probably have the right to look for reimbursement.

The decree is affirmed, with costs.

The other Justices concurred.