# Staunton.

## University of Richmond v. Ernest L. Stone, et als.

September 22, 1927.

1. Bills, Notes and Checks—*Provision for Counsel Fees—Validity.*—A provision in a note for the payment of counsel fees in the event that the note is not paid at maturity is a valid, binding and enforceable contract.

2. Mortgages and Deeds of Trust—*Attorney's Fees—Note Secured by Deed of Trust Providing for Attorney's Fees—Lien for Attorney's Fees on the Property in Hands of Subsequent Purchasers—Case at Bar.*—Notes secured by a deed of trust provided for the payment of attorney's fees in case the notes should not be paid at maturity. The deed of trust provided for sale if the notes were not paid at maturity, and the application of the proceeds "to discharge the amount of money then payable upon the said notes." The property covered by the deed of trust was transferred several times and each successive purchaser assumed the debt secured by the trust deed. It was conceded that the grantor of the deed of trust was liable to the holder of one of the notes for the attorney's fee, but it was contended that the attorney's fee did not constitute a lien upon the property, and the contract did not bind the subsequent purchasers personally.

   *Held:* That under the deed of trust there was a lien for the attorney's fees upon the property and that the subsequent purchasers in assuming the debt assumed liability for the attorney's fees.

3. Vendor and Purchaser—*Purchaser of Equitable Title Takes Place of Person from Whom he Purchases.*—The general rule is that a purchaser of a mere equitable title must take the place of the person from whom he purchases. He stands in his vendor's shoes, and gets the title of his vendor and nothing more, subject to all equities existing against it in the hands of his vendor.

4. Vendor and Purchaser—*Notice—Duty of Grantee to Investigate—Grantee Charged with Notice of Facts Investigation would have Disclosed.*—When it is the duty of a grantee of property to investigate the extent of the liens against his title, and he fails to do so, he is chargeable with notice of all facts which such an investigation properly made would have disclosed.

5. Mortgages and Deeds of Trust—*Conveyance of Mortgaged Property—Duty of Grantee to Inquire as to Rights of Mortgagee.*—Where a person is informed that certain property is mortgaged, this puts him on inquiry as to the rights of the mortgagee.

6. Notice—*Constructive Notice—Party Put on Inquiry—Notice Imputed.*—It is a general rule that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a party on inquiry, constructive notice will be imputed to him if he designedly abstains from inquiry for the purpose of avoiding notice.

7. Notice—*Constructive Notice Equivalent to Actual Notice.*—Notice may be actual or constructive, and whether the one or the other, the result is the same.

8. Vendor and Purchaser—*Bona Fide Purchaser—Purchaser Must Exercise Due Diligence.*—A person who fails to exercise due diligence and to avail himself of the information which is easily in his reach is not a *bona fide* purchaser.

9. Mortgages and Deeds of Trust—*Subsequent Purchasers—Actual Notice of Provision of Deed of Trust as to Counsel Fees—Case at Bar.*—The instant case involved the question of liability of subsequent purchasers of property covered by a deed of trust, who assumed the debt, for attorney's fees provided for by the deed of trust. The purchasers contended that in assuming the debt secured by the deed of trust they relied on the recorded mortgage. The recorded mortgage, however, was to secure notes for $17,000.00, whereas the debt assumed by the purchasers was for only $12,000.00, and the deed to the subsequent purchasers referred to some of the notes secured by the deed of trust as having been paid.

   *Held:* That, from this, actual notice of the provisions as to attorney's fees might reasonably be inferred, and that the purchasers fully informed themselves as to the provisions contained in the notes secured and as to which of the notes had been paid.

10. Mortgages and Deeds of Trust—*Subsequent Purchasers Assuming Mortgage—Liability of Such Purchasers.*—Each of the subsequent purchasers of property covered by a trust deed assuming payment of the mortgage in general terms, or without restrictions, is liable for all that might be recovered thereon against the grantor in the deed of trust, including overdue as well as accruing interest, according to the terms of the contract, and taxes on the premises which it was the duty of the mortgagor to pay, and also attorney's fees and costs of suit.

11. Mortgages and Deeds of Trust—*Lien of Deed of Trust—Attorney's Fees.*—The lien of a deed of trust secures payment of attorney's fees provided for in the notes secured by the deed of trust.

12. Mortgages and Deeds of Trust—*Vendor and Purchaser—Assumption of Mortgage—Liability of Purchaser.*—Subsequent purchasers of the land who assume the payment of the mortgage in general terms, are personally liable for all that may be actually due upon it, for which the mortgagor may be liable, including attorney's fees provided for on the face of the notes secured by the mortgage or deed of trust.

Appeal from a decree of the Circuit Court of Roanoke county.   Decree for complainants.   Named defendant appeals.

Reversed.

The opinion states the case.

*A. W. Patterson,* for the appellant.

*R. Grayson Dashiell, A. Ellis Baker, H. W. Goodwyn, W. J. Henson, Allen, Walsh & Michie,* and *Brooks & Grove,* for the appellees.

West, J., delivered the opinion of the court.

On March 24, 1922, Nannie M. Goodwyn conveyed to H. W. Goodwyn, Trustee, the property in South Richmond, Virginia, known as the "Leader Building," in trust to secure "the deferred purchase money on said property amounting to seventeen thousand dollars ($17,000.00), and interest and evidenced by twenty-seven (27) negotiable notes of even date with this deed, drawn by the said Nannie M. Goodwyn, party of the first part, and payable to bearer at the Bank of Commerce and Trust, Manchester Branch."

There were three principal notes, two for $2,500.00 each, and one for $12,000.00, and the remaining twenty-four notes were interest notes.   Each of these notes contained the following provision:   "The makers and endorsers hereby   *   *   *   *   agree to pay all expenses

incurred in collecting the same, including ten per cent attorney's fee, in case this note shall not be paid at maturity."

Subsequent to the execution of the deed of trust, the property therein conveyed was sold and conveyed by successive deeds to Chas. H. Bowman, B. E. Wheeler, John E. Buck, Ernset L. Stone and Mary Duffield Hilliard, each of said purchasers expressly assuming the payment of the debt secured by the Goodwyn deed of trust.

Upon default being made in the payment of all of the unpaid notes, the trustee sold the property pursuant to the terms of the deed of trust and Ernest L. Stone and National Investment Company became the purchasers at $21,750.00.

Soon after the sale, John E. Buck instituted a chancery suit, to which all persons interested were made parties, alleging his interest in the property, and stating that there were four other subsequent deeds of trust on the property at the time the trustee sold the same. The prayer of the bill is that the consummation of the sale be enjoined, an account of the liens be taken, that the property be resold under a decree of the court, and for general relief. The style of that suit is "*John E. Buck* v. *Ernest L. Stone, and others.*"

The petitioner, University of Richmond, demurred to the bill. The court without passing upon the demurrer referred the cause to Commissioner Fellers to take, state and settle an account of all liens on the real estate known as the Leader Building, with their dignities and priorities. The commissioner executed the decree and filed his report, from which it appears that there is an unpaid balance due on the deed of trust from Nannie M. Goodwyn to H. W. Goodwyn, trustee, amounting to $12,000.00, with interest thereon at six

per cent from December 24, 1924, till paid, as evidenced by a note for $12,000.00 held by the University of Richmond, which provides for the payment of ten per cent attorney's fees. A part of the evidence upon which the report was based was the following memorandum, which is signed by the attorneys for all parties:

"It is admitted and agreed that the debt secured by the trust deed from Nannie M. Goodwyn to H. W. Goodwyn, Trustee, as shown by a certain note for the principal sum of $12,000.00, now in hands of University of Richmond, was assumed by each successive purchaser from said Nannie M. Goodwyn, to-wit: Chas. H. Bowman, B. E. Wheeler, John E. Buck, Ernest L. Stone and Mary Duffield Hilliard, as per their several deeds of bargain and sale, which were used in the argument and may be treated as part of this record."

The case was heard upon the exceptions to the report and the court, after a rehearing, entered a decree adjudging that the attorney's fees mentioned in the several notes are not liens on the "Leader Building," and are not an issue before the court; but permitting parties, if any, who are entitled to such fees to enforce their rights in the proper forum. From that decree an appeal was allowed to the appellant, University of Richmond.

Appellant makes three assignments of error. It seems unnecessary to consider the first as the second and third involve the real contest in the case. They are as follows:

"2. That the court refused to allow petitioner's claim for ten per cent on the amount of its notes under the Goodwyn trust deed as a part of petitioner's lien upon the Leader Building.

"3. That the court refused to give a personal decree in favor of petitioner against Nannie M. Goodwyn

and others for the amount of said ten per cent collection charge.''

[1] The authorities are practically unanimous in holding that a provision in a note for the payment of counsel fees in the event that the note is not paid at maturity is a valid, binding and enforceable contract. Since the amendment of the negotiable instruments law permitting such agreements, such contracts have been held valid by this court. *Oglesby* v. *Bank*, 114 Va. 663, 77 S. E. 468; *Cox* v. *Hagan*, 125 Va. 656, 100 S. E. 666; *Triplett* v. *Bank*, 121 Va. 189, 92 S. E. 897; *Atkinson* v. *Neblett*, 144 Va. 220, 132 S. E. 326.

In *Triplett* v. *Bank*, 121 Va. 193, 92 S. E. 898, *supra,* the court said:  ''This fee was expressly provided for on the face of the note, and while there has been some difference of opinion, the question has been settled in this State in favor of the validity of such a provision, subject always to the power of the court, if the fee be unreasonable in amount, or unconscionable, to reduce it, by the recent case of *Colley* v. *Summers, etc., Co.,* 119 Va. 439, 89 S. E. 906 [Ann. Cas. 1917D, 375].''

[2] The validity of the contract to pay ten per cent attorney's fee is not controverted in the instant case, but it is contended that the fee does not constitute a lien upon the property conveyed by the deed of trust from Nannie M. Goodwyn to H. W. Goodwyn, trustee, *supra*, and that the contract does not bind the subsequent purchasers personally

It is conceded that Nannie M. Goodwyn is liable to the holder of the note for the attorney's fee.   The deed of trust provides that if the notes secured are not paid at maturity, the trustee, after advertising, as directed by the deed, may sell the property, ''for cash as to so much of the proceeds as may be necessary to defray the expense of executing this trust   *   *   *   and *to*

*discharge the amount of money then payable upon the said notes*, if any;   *   *." (Italics ours.)

Under the terms of the contract, as soon as default was made in the payment of the notes, the makers and endorsers were liable on the notes for an additional sum of ten per cent attorney's fees, if properly incurred.

These facts appearing upon the face of the deed of trust, which was duly recorded, subsequent purchasers will not be heard to say that they had no notice of the rights of the holders of the notes secured by the Goodwyn deed of trust.  They bought subject to the provisions of this deed and could acquire no greater rights than those possessed by their grantor.  The property being liable for the attorney's fee in the hands of Nannie M. Goodwyn, it was so liable in the hands of her vendee.

As appears from the memorandum agreement, *supra*, it is admitted and agreed that the debt secured by the Goodwyn deed of trust, *as shown by a certain note for the principal sum of $12,000.00*, was assumed by Chas. H. Bowman, B. E. Wheeler, John E. Buck, Ernest L. Stone and Mary Duffield Hilliard, the successive purchasers from Nannie M. Goodwyn.  When default was made in the payment of the $12,000.00 note, the attorney's fee of ten per cent, under the terms of the note, when thereafter properly incurred, became due and payable as a part of the debt secured by the deed of trust.  Being subsequent purchasers who acquired only the equity of Nannie M. Goodwyn in the land, they can get no better title than she had.

[3] In *Wasserman* v. *Metzger*, 105 Va. 744, 54 S. E. 893, 7 L. R. A. (N. S.) 1019, the court said:  "The general rule is that a purchaser of a mere equitable title must take the place of the person from whom he purchases.  He stands in his vendor's shoes, and gets

the title of his vendor and nothing more, subject to all equities existing against it in the hands of his vendor." Citing *Briscoe* v. *Ashby*, 24 Gratt. (65 Va.) 454, and other cases.

[4] The obligation was upon them to investigate the status and amount of the debt secured by the Goodwyn deed of trust which remained unpaid. Had they so investigated they would have learned that the $12,-000.00 note contained the agreement to pay ten per cent attorney's fee, and that the same was a part of the debt secured by the deed. When, as in the instant case, it is the duty of the grantee to investigate the extent of the liens against his title, and he fails to do so, he is chargeable with notice of all facts which such an investigation properly made would have disclosed.

[5] "Where a person is informed that certain property is mortgaged, this puts him on inquiry as to the rights of the mortgagee." 20 R. C. L. 349.

[6] "It is a general rule that whatever puts a party on inquiry amounts in judgment of law to notice, provided the inquiry becomes a duty, and would lead to a knowledge of the facts by the exercise of ordinary intelligence and understanding. Wherever facts put a party on inquiry, constructive notice will be imputed to him if he designedly abstains from inquiry for the purpose of avoiding notice." 29 Cyc., page 1114.

[7] In *Lamar* v. *Hale*, 79 Va. 147, this is said: "Notice may be actual or constructive, and whether the one or the other, the result is the same. And it is settled doctrine that whatever circumstances are sufficient to put a purchaser upon inquiry which would lead to a discovery of the trust, will be good constructive notice."

In *Davis* v. *Tebbs*, 81 Va. 604, we find this: "Wherever inquiry is a duty, the party bound to make it is

affected with knowledge of all which he would have discovered had he performed the duty."

Judge Riely, speaking for the court, in *Jameson* v. *Rixey*, 94 Va. 342, 26 S. E. 861, 64 Am. St. Rep. 726, said: "It is the duty of a purchaser to look to the title papers under which he buys. If he close his eyes to the sources of information, he does so at his peril. 'Means of knowledge, with the duty of using them, are, in equity, equivalent to knowledge itself.' Mrs. Rixey, as purchaser of the land under the decree made in the said suit, was affected with notice of all that the record disclosed, and also of all to which knowledge there acquired would have led her. She was clearly put upon inquiry. If she had performed her duty, and availed herslef of the means pointed out to her, and easily within her reach, she must necessarily have discovered the incumbrance in favor of Mrs. Jameson, and could have ascertained from her whether it had been satisfied or abandoned."

In *National V. Bank* v. *Harman*, 75 Va. 607, this court said: "If the deed from M. G. Harman to Asher W. Harman had mentioned the existence of a negotiable note, it might have become the duty of Mrs. O'Toole, before purchasing, to call for its production; * * * Mrs. O'Toole having constructive notice of the lien, would have the like notice of the negotiable note, and she would not be allowed to close her eyes to the facts thus communicated."

Appellees contend that they are *bona fide* purchasers for value and without notice.

[8] A person who fails to exercise due diligence and to avail himself of the information which is easily in his reach is not a *bona fide* purchaser.

This court in *Burwell* v. *Fauber*, 21 Gratt. (62 Va.) 463, says: "Certainly a *bona fide* purchaser for value,

and without notice, is a great favorite of a court of equity, and that court will not disarm such a purchaser of a legal advantage.   But we must not permit ourselves to be misled by words or maxims in this matter. Other persons are entitled to the protection and the favor of a court of equity as well as purchasers. Creditors are such persons,   *   *   *.   Purchasers are bound to use a due degree of caution in making their purchases, or they will not be entitled to protection. *Caveat emptor* is one of the best settled maxims of the law, and applies exclusively to a purchaser.   He must take care, and make due enquiries, or he may not be a *bona fide* purchaser.   He is bound, not only by *actual*, but also by *constructive* notice, which is the same in its effect as actual notice.   *   *   *   He has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser without notice."

Counsel for appellees admit that if the subsequent purchasers had actual or constructive notice of the Goodwyn fee contract they are bound by it.   The facts disclosed by the record warrant the conclusion that they had, not only constructive, but *actual* notice.

Appellees contend that in assuming the Goodwyn debt they relied on the *recorded mortgage*.   If so, they would be bound for $17,000.00, the total amount of the principal of the debt therein secured, instead of $12,-000.00.   On the contrary, the deed from Wheeler to Buck recites that the two principal notes for $2,500.00 each and all interest notes have been paid, leaving a balance due under the deed of trust of only $12,000.00. Referring to the first Bowman mortgage, the same deed recites that principal notes aggregating $4,235.69 had been paid.   The deed from Wheeler to Buck further recites that Buck assumes the payment of indebtedness aggregating $32,000.00.

[9] From these and similar facts it may be reasonably inferred that the subsequent purchasers acted as a reasonably prudent man would have acted under like circumstances, and fully informed themselves as to the provisions contained in the notes secured and as to which of the notes had been paid, before entering into a contract to assume the payment of the same.

[10] Each of the subsequent purchasers (grantees) assumed the payment of the Goodwyn mortgage and is liable for all that might be recovered thereon against Nannie M. Goodwyn, the grantor.

In 27 Cyc. 1355, the law is stated thus: "But if he assumes the mortgage in general terms, or without restrictions, he becomes liable for all that may be actually due upon it, which may include overdue as well as accruing interest, according to the terms of the contract, and taxes on the premises which it was the duty of the mortgagor to pay, and also attorney's fees and costs of suit."

The questions here involved are of first impression in this jurisdiction, but reason and the greater weight of authority sustain the views herein expressed.

[11] Among the cases holding that the lien of the deed of trust secures the payment of the attorney's fee, in such cases, are the following: *Bank* v. *Goldtree*, 129 Cal. 160, 61 Pac. 785; *Peachy* v. *Witter*, 131 Cal. 316, 63 Pac. 468; *Worth* v. *Worth*, 155 Cal. 603, 102 Pac. 663; *Armige* v. *Henry*, 14 N. M. 181, 89 Pac. 305, 25 L. R. A. (N. S.) 288; *Jones* v. *Bank*, 74 Colo. 140, 219 Pac. 780; *Rockwell* v. *Thompson*, 124 Wash. 176, 213 Pac. 922, overruling *Watson* v. *Barnard*, 105 Wash. 536, 178 Pac. 477; *Carson* v. *Hurt* (C. C. A.), 250 Fed. 32; *Merrimon* v. *Parkey*, 136 Tenn. 645, 191 S. W. 327; *Millsup* v. *Chapman*, 76 Miss. 942, 26 So. 369, 71 Am. St. Rep. 547; *Carhart* v. *Allen*, 56 Fla. 763, 48 So. 47;

*Town* v. *Alexander*, 85 Ill. App. 512, followed in 185 Ill. 254, 56 N. E. 1111; *Cheltenham* v. *Whitehead*, 128 Ill. 285, 21 N. E. 569.

[12] Among the cases holding that subsequent purchasers of the land, who assume the payment of the mortgage in general terms, are personally liable for all that may be actually due upon it, for which the mortgagor may be liable, including attorney's fee provided for in the face of the notes, are these:   25 Cyc. 1355; *Brown* v. *Avery*, 119 Mich. 384, 78 N. W. 331; *Johnson* v. *Land Co.*, 168 Iowa 345, 150 N. W. 596; *Windle* v. *Hughes*, 40 Ore. 1, 65 Pac. 1058; *McAbee* v. *Cribbs*, 194 Pa. St. 94, 44 Atl. 1066; *White* v. *Schader*, 185 Cal. 606, 198 Pac. 19, 21 A. L. R. 499; *Williams* v. *Moody*, 95 Ga. 8, 22 S. E. 30; *Johnson* v. *Harder*, 45 Iowa 677; *Watt* v. *Hunter*, 20 Tex. Civ. App. 76, 48 S. W. 593, 49 S. W. 412; *Hatcher* v. *Kinkaid*, 48 Okl. 163, 150 Pac. 182; *Merrimon* v. *Parkey*, 136 Tenn. 645, 191 S. W. 327; *Parker* v. *McGinty*, 77 Colo. 458, 239 Pac. 10.

Very few cases have been cited which are at variance with the holdings in the foregoing cases, and we deem it unnecessary to discuss them.

For the foregoing reasons, the decree complained of, insofar as it refuses to allow judgments for attorney's fees as provided for on the face of the notes and holds that they are not liens upon the property conveyed by the deed of trust to secure the payment of the notes; and insofar as it refuses to award personal judgment against the proper parties for the attorney's fees, will be reversed.   And this court proceeding to enter such decree as the circuit court should have entered, in this respect, will award a judgment in favor of the University of Richmond against Nannie M. Goodwyn, Chas. H. Bowman, B. E. Wheeler, John E. Buck, Ernest L. Stone and Mary Duffield Hilliard for the

sum of $1,200.00, with interset thereon from March. 22, 1925, till paid, attorney's fee provided for in the $12,000.00 note held by the University of Richmond, which attorney's fee is adjudged to be a lien upon the Leader Building mentioned and described in the trust deed. University of Richmond will also be allowed its costs in prosecuting its appeal here.

The case will be remanded with instructions to the court to dispose of the same in conformity with the views herein expressed.

*Reversed.*