JOHN J. FELLS, ADM'R FOR BENJAMIN HARRISON v. LEVI L. BARBOUR AND WALTER REMO.

| 58 | 49 |
|---|---|
| 119 | 387 |

| 58 | 49 |
|---|---|
| s24NW | 672 |
| 129 | ³348 |
| 129 | ⁴348 |
| 129 | ³349 |

*Tax-deeds—Assessment rolls in evidence—Estoppel.*

1. A State tax-deed may be executed and acknowledged by the Deputy Auditor General; and its validity does not depend on its being recorded if no question of priority is made.

2. Assessment rolls with the certificate of the assessor or board of review attached are admissible in proof of the regularity of tax-deeds, where the tax or collection roll fails to show that such certificates were made; and it is discretionary with the trial judge to admit such evidence out of its order.

3. One whose title is obtained from an execution purchaser is in· such privity with the defendant in the execution that if the latter has mortgaged the land he cannot let it be sold for taxes and bid it in so as to cut off the mortgagee's rights; nor can he cut them off by taking tax leases.

4. The purchase of bids at a tax-sale operates as a payment of the taxes so far as a previous mortgagee of the land, or his assignee, is concerned.

Error to Wayne. (Chambers, J.) June 9.—Sept. 29.

EJECTMENT. Plaintiff brings error. Reversed.

*Ervin Palmer* and *F. A. Baker* for appellant. State and county tax rolls are invalid if the signatures or copies of them are lacking: *Sibley v. Smith* 2 Mich. 501; *Clark v. Crane* 5 Mich. 151; *Colby v. Russell* 3 Me. 227; especially as the certificates need not be copied: *Tweed v. Metcalf* 4 Mich. 596.

*H. C. Wisner* for appellee. Certificates required to be attached to assessment rolls are no part of the tax roll: *Tweed v. Metcalf* 4 Mich. 579; *Bird v. Perkins* 33 Mich. 31; one who has bought the State's title stands precisely as though he had bought at the original sale: Comp. L. (1857) § 1091; *Aud. Gen'l v. Sup'r of Monroe* 36 Mich. 74–5; and he is under no obligation to pay previous taxes: *Lucy v. Davis* 4 Mich. 140; *Dubois v. Campau* 24 Mich. 368; *Black-*

*wood v. Van Vleit* 30 Mich. 118–21, criticising *Lacy v. Davis ; Sands v. Davis* 40 Mich. 14.

SHERWOOD, J. This action is ejectment, to recover the possession of lot five, Scoville & Whipple's subdivision of the "Loranger Farm," in the Twelfth ward in the city of Detroit. The suit was commenced in the life-time of the deceased, and continued in the name of the present plaintiff since his death, under the provision of the statute for that purpose. How. Stat. § 7817. Two trials have been had at the circuit, both resulting for the defendant. On the last trial the verdict was directed by the court, and judgment having been entered thereon, the plaintiff brings error.

It was stipulated that Thomas Hurst was owner of the property in question in 1873, on the 4th of November, and that defendants were in possession when this suit was commenced, April 9, 1883, and claimed title thereto adversely to the plaintiff. On the trial the plaintiff gave in evidence (1) a mortgage dated November 4, 1873, given by said Thomas Hurst to Benjamin Harrison, to secure the payment of the sum of $1000; (2) a sheriff's deed, dated December 23, 1881, duly executed, given on foreclosure of said mortgage, for the consideration of $1685, to the said Benjamin Harrison, which deed, according to the certificate of the sheriff, was to become operative December 23, 1882.

The defendants, to maintain their defense, offered in evidence three tax deeds, given on sales of said lot for the State and county taxes assessed thereon for the years 1875, 1876 and 1877, to the defendant Barbour. These deeds were all signed, executed and acknowledged by Hubert R. Pratt, deputy Auditor General, and were all admitted in evidence, against the objection of counsel for plaintiff that "the deeds were not those of the Auditor General," and also that they were not recorded.

We are unable to discover that the recording of these deeds could make for either party, as the case is presented. Certainly it could not affect their validity, and no question of priority is made. This Court has already decided that

execution of the deeds and the acknowledgment thereof by the deputy Auditor General is sufficient. *Westbrook v. Miller* 56 Mich. . We do not think the court erred in admitting these deeds in evidence.

The counsel for defendants next offered in evidence a lease of the lot in question to the defendant Barbour for the term of one hundred years, given by the comptroller of the city of Detroit, on a sale made thereof for the general city taxes assessed against the lot for the year 1875; also a similar lease given to said Barbour for the city taxes of 1876, and two others, running to the same party, for the taxes assessed against the property in each of the years 1877 and 1878; the term in the last three leases being in each for ninety-nine years. These four leases were all received in evidence by the court, subject to the objection of incompetency, and plaintiff's counsel excepted, and here the defendants rested their case.

It is claimed by the defendants that these leases—all except that made for the tax of 1875 (which they abandoned)—are all executed in accordance with the statute, and are prima facie evidence in favor of defendants' right to possession. Sess. Laws 1857, §§ 246-253,—Charter of Detroit. The principal reliance of defendants, however, appears to be upon the tax titles from the State.

For the purpose of showing these tax titles invalid, the plaintiff, in rebuttal, introduced from the county treasurer's office the tax-rolls for 1875, 1876 and 1877. The tax-rolls contain no certificates of the board of review, nor copies of certificates nor any signatures thereto. They do contain warrants signed by the city assessor, attached thereto. At the time the assessments were made under which these tax-deeds were given, the assessment roll consisted of a properly arranged written statement, containing the names of the resident property owners of the township or ward, a description and amount of their property, and that of non-resident owners, and the assessor's valuation of each parcel of land, entered, signed and properly certified by him, and approved by the proper board of review, with the certificate of approval en-

dorsed thereon or attached thereto.    Comp. L. (1871), § 987 ;
also see §§ 990, 991, 995, 999.    The assessment roll thus pre-
pared and completed by extending the amount of tax to be col-
lected thereon, was required to be kept in the office of the
supervisor in townships, and in the office of the person dis-
charging the duties of assessor in cities.    § 995.    The tax-roll,
or collection roll as it is not unfrequently called, consisted of
a copy of the assessment roll, without the certificate or signa-
tures of the assessor or board of review thereon or thereto
annexed, together with the supervisor's warrant to the collec-
tor attached.    It was held by the Supreme Court of this State
that the collection roll was not invalid by reason of not con-
taining these certificates or copies thereof.    See *Tweed v.
Metcalf* 4 Mich. 599 ; *Bird v. Perkins* 33 Mich. 31.    The
same point seems to have been similarly decided in *Van Rens-
selaer v. Witbeck* 7 Barb. 133 ; and to the same effect upon
this point is the case of *Sibley v. Smith* 2 Mich. 502.    How
this question would be decided under present legislation
it is unnecessary now to decide.

It seems quite clear that under the testimony offered by the
plaintiff upon this point the tax titles would have been invalid,
but the defendants' counsel, against the objection of plaintiff,
were permitted by the court to introduce in evidence the
assessment roll proper, showing the necessary certificates,
thereby removing the apparent difficulty.    This ruling of the
circuit judge was excepted to by plaintiff's counsel.    We
think, however, the testimony was properly admitted.    The
proof was competent and material when offered.    The order
might not be in compliance with rules, but that was within
the discretion of the circuit judge.    With this testimony in,
as the case then stood, the tax deeds were at least prima facie
valid.

Plaintiff's counsel further insists that, by reason of Bar-
bour's relation to the property, he can claim nothing under
the tax deeds as against the title of the plaintiff, and that they
are no defense to this suit.    The plaintiff's title was derived
through the mortgage given by Hurst.    While Hurst owned
the property, it was his duty to pay or redeem the same from

all taxes assessed against it, and he could not cut off the mortgage by purchasing a tax title upon the property. The rule is well stated by Chief Justice Cooley in a case in this Court, in which he says: "It is conceded that there are a great many cases in which parties standing in particular relations to the land, or to the owner or other person interested therein, are not suffered to acquire tax titles and rely upon them as against other claimants. Some of those are very plain, and it is quite unnecessary to do more than name them. A tenant for example, who has covenanted to pay the taxes cannot be suffered to ·neglect this duty, and then acquire a tax. title which shall cut off the title of his landlord. Neither · shall the purchaser in possession under an executory contract be allowed to cut off the rights of his vendor by a like purchase, nor a mortgagor that of his mortgagee. A tax purchase made while such a relation exists is made in wrong ; and the law in circumvention of dishonesty will conclusively presume that it was made in the performance of duty, and not in repudiation of it." *Connecticut Mut. L. Ins. Co. v. Bulte* 45 Mich. 113, 120.

It will be recollected that on the 4th day of November, 1873, Hurst gave the mortgages, and the record shows that subsequently the property was sold on an execution against Hurst to Hawkins, and was by him, on the 21st of August, 1877, sold to defendant Barbour and Theodore S. Darling ; and Barbour and Darling, on the 7th of October, 1878, on tax sale for taxes of 1877, bid off the property for the taxes of that year, and also became the purchasers of the bids made by the State in 1876 and 1877 for the taxes of 1875 and 1876, and that Darling assigned his interest in all these bids to Barbour on the 15th day of August, 1881, and the tax titles were all issued to Barbour. It will be thus noticed that parties interested in the property had a right to redeem from the sale first made as late as the 30th of September, 1877. How. Stat. § 1094. From this statement it is shown that the defendant Barbour was one of the owners of the original Hurst title for nearly six weeks before the time for redemption from the first tax sale expired and that he derived his

title by mesne conveyances from Thomas Hurst, the mortgagor.

By virtue of the execution sale, and the transfers of the interest of the purchaser thereunder, the defendant Barbour acquired all the interest and rights that Hurst had in the mortgaged premises at the time the levy was made. How. Stat. § 6108. It was his privilege to pay or redeem from the sale on the Harrison mortgage at any time from the 21st day of August, 1877, until the 23d day of December, 1882. The sheriff made his levy on the 26th of July, 1875, and the sale of the property upon the execution against Hurst was made on the 28th day of December, 1875. On the 29th day of March, 1877, the deed given upon said sales became operative. The defendant then held, so far as this record shows, the title of the mortgagor, and precisely the same interest that the mortgagor did before the execution levy. It was the mortgagor's duty to pay the taxes remaining unpaid while he owned the property, and when the defendant acquired all the mortgagor's interests in the property it became his duty to discharge the unpaid taxes standing against the property, which was redeemable, and he could not, by neglecting and refusing so to do, take an assignment of the certificates of sales and hold them till redemption had expired, and thereby obtain the deed of the State upon such certificates, and thus cut off the mortgagee's rights under his mortgage.

There is no reason why the defendant should occupy any more favorable position than the mortgagor did when the execution sale was made. The defendant got no greater rights under his purchase on that sale, so far as the record shows, than he would have received had the mortgagor voluntarily conveyed to the defendant the equity of redemption to the property ; and no one, I apprehend, will contend that the mortgagor could have cut off the mortgagee's rights, or the rights of his assignee, by obtaining the deed of the State under such circumstances; and the same rule applies to the leases. Certainly equity and justice require the application of this doctrine as well to the defendant as it would have done to the mortgagor had he retained his interest in the land, and

I do not think the rules of law prevent it. I think the case is within the reasoning of the Court in *Connecticut Mut. L. Ins. Co. v. Bulte* 45 Mich. 113.

The plaintiff or mortgagor was in possession during the entire period of the occurrence of the transfers and several changes referred to. If the defendant did not take possession immediately after his title matured under his execution purchase, his right thereto remained, and entitled him to the rents and profits. The defendant had from the month of March until the 30th of September to redeem from the first tax sale, after he had obtained [the property] under the execution sale. His purchase of the bids under the sales made for taxes operated as a payment of the taxes, so far as the mortgagee or his assigns are concerned.

This disposes of the case so far as relates to this trial. The judgment must be reversed. I think upon the other ground stated it would be difficult to sustain the judgment; but it is unnecessary to consider that subject now. A new trial will be granted.

COOLEY, C. J. and CHAMPLIN, J. concurred.

CAMPBELL, J. I am not satisfied that defendants were under any obligation to redeem from the tax sales, and think they could hold the titles.