## ELIHU L. CLARK v. CALVIN DANIELS ET AL.

*Mortgage—After-acquired title—Quitclaim deed—Evidence.*

1. A son contracted *verbally* for the sale to his father of 40 acres of land, subject to a $700 mortgage, which the father was to pay as the consideration for the purchase. The father, after taking possession, mortgaged the forty acres, with other lands owned by him, without covenants of warranty, to the holder of the $700 mortgage, which was paid by deducting the amount due from the amount secured by the second mortgage. The son afterwards conveyed the 40 acres to the father by *quitclaim* deed, and it is held that the lien of the second mortgage attached to the 40 acres as soon as the father *thus* acquired the legal title, and takes precedence over levies by his subsequent judgment creditors; that the transaction defrauded no one, and that a quitclaim deed, under the circumstances, was as ample to carry out the intention of the parties as a warranty deed would have been, and that the title conveyed by it inured to the benefit of the mortgagee as fully as if the mortgage had contained covenants of warranty.

2. In such a case it is competent to prove the making of said verbal agreement, and the payment for said 40 acres, by parol testimony.

Error to Lenawee. (Watts, J.) Argued July 10, 1889. Decided October 18, 1889

Ejectment. Defendants bring error. Affirmed. The facts are stated in the opinion.

*Bean & Lane* (*Millard, Wood & Bird*, of counsel), for appellants, contended:

1. The objection to the admission of evidence of the verbal arrangement for the purchase of the 40 acres was well taken. The statutes prohibit a conveyance of land except by writing duly executed; citing How. Stat. §§ 6179, 6181; and this Court has said on more than one occasion that a verbal agreement for the sale of land possesses no life for any purpose; citing *Hall v. Soule*, 11 Mich. 494; *Liddle v. Needham*, 39 Id. 148; *Hillebrands v. Nibbelink*, 40 Id. 546; *Sutton v. Rowley*, 44 Id. 112; nor will part performance aid such a contract at law; citing *Dickinson v. Wright*, 56 Mich. 42.

2. The other question is whether a conveyance without covenants of any kind will carry after-acquired lands embraced within its description, but not owned at time of the conveyance, the rule of law being to the contrary; citing *Comstock v. Smith*, 13 Pick. 116; *Kimball v. Blaisdell*, 5 N. H. 533; *Doswell v. Buchanan's Ex'rs*, 3 Leigh, 365; *Clark v. Baker*, 14 Cal. 612; *McCrackin v. Wright*, 14 Johns. 193; *Brown v. Phillips*, 40 Mich. 264; *Frost v. Missionary Society*, 56 Id. 62.

*Weaver & Weaver*, for plaintiff, contended for the doctrine laid down in the opinion.

CHAMPLIN, J. This is an action of ejectment, and both parties claim title (to the 40 acres of land in dispute) through Warren Gilbert.

October 25, 1859, the legal title became vested in William G. Gilbert, who was a son of Warren Gilbert. November 18, 1870, William G. Gilbert executed a mortgage upon the premises to Elihu L. Clark, Sr., for $700. On March 4, 1875, and while the legal title was in William G. Gilbert, Warren Gilbert executed a mortgage, covering the land in question (and other lands), to Elihu L. Clark, Sr., for $19,000. Later, and May 18, 1875, William G. Gilbert executed to his father, Warren Gilbert, a quitclaim deed of the premises (in dispute), and on the same day the $700 mortgage was released from record.

A judgment was obtained in the circuit court for the

county of Lenawee on July 26, 1878, for $581, in a suit in which Charles Daniels was plaintiff and Warren Gilbert was defendant. Execution was issued on this judgment August 19, 1878, and levied upon the land in question, and afterwards a sale by virtue of said execution was had, and the same was struck off to Alfred L. Millard and Seth Bean on October 25, 1878, who received the sheriff's certificate therefor, and afterwards assigned the same to the defendants Calvin Daniels, Charles Daniels, and Chauncey Cooper, who have received the sheriff's deed therefor, dated November 20, 1887.

The mortgage for $19,000 was foreclosed by advertisement under the statute, and the premises were sold to Elihu L. Clark, Sr., February 17, 1879. The premises were not redeemed from the sale, and he received the sheriff's deed.

On the trial of the cause Warren Gilbert was produced as a witness for the plaintiff, and testified that in May, 1874, he made a bargain with his son, William G. Gilbert, for the purchase of the land in question, at which time said William G. owned the land. He was further permitted to testify, against the objection of defendants' counsel, duly and properly made, as follows:

" That in the month of May, 1874, his son, William G., was the owner of the land in question; that there was then a mortgage upon said premises securing a note of $700, given by said William G. to E. L. Clark, Sr. [being a mortgage given in 1870]; that he had wanted to get some money at a lower rate of interest, and he bought the land of his son, and was to pay the $700 note and take up that mortgage securing it as soon as he could get the money at a lower rate of interest, and then William G. was to deed him the land; that William G. gave him immediate possession; that was in May, 1874, and he put cattle on it at that time, and pastured it, and used it as his own, and so continued to occupy it until March 4, 1875, when the $19,000 mortgage to Clark, Sr., was given by him, and from that time until defend-

ants took possession; that he paid the note when the $19,000 mortgage was given on March 4, 1875, the amount of that note and interest being taken out of the $19,000, the amount for which the $19,000 mortgage was drawn; that the said $700 note was then given to witness; that Clark said he would keep the $700 mortgage till William G. came back from Iowa, and made the deed to him [witness], and witness told him to keep the note with it, and put it in his safe, which he did for witness' convenience; that William G. came back in May following, and executed the deed to witness at Clark's office."

On cross-examination the witness further testified as follows:

"That there was no written contract between himself and his son with reference to this land until the deed was executed in May, 1875; that it was understood between them that William G. was to have a portion of the home farm when witness had his indebtedness all paid; that there was no time fixed when William G. should deed to witness in the arrangement of May, 1874, except that it was to be when witness could get money at a low rate of interest, and mortgage the whole farm; that there was no specific price fixed upon the land in the bargain between him and his son; that witness was to pay the $700 note, and interest, and take up the mortgage, and when they got through their trouble, and their debts paid, William G. was to have a portion of the old farm; that a definite 200 acres was agreed upon which he was to have; and that this forty acres was no part of the 200 acres."

It appears from the record before us that the mortgage for $19,000 covered 712 acres of land, including the 40 acres in dispute. This mortgage contained no covenants of warranty.

The testimony introduced in behalf of the plaintiff to prove that Warren Gilbert had purchased from William G. Gilbert the premises in question, and that he paid for them in the transaction under which the $19,000 mortgage was given, was properly received. It was a completed arrangement before any rights of those through

whom defendants claim had attached to the land. It was the consummation of this parol agreement that placed the legal title in Warren Gilbert. Elihu L. Clark, Sr., the person more particularly interested, understood what the bargain was between the father and the son, and as part of the transaction took a mortgage from Warren Gilbert for $19,000, which included $700, being the consideration moving from Warren to William G. for this 40 acres upon which Clark held the note of William G., secured by mortgage. These he retained in his hands until May 18, 1875, when the legal title was conveyed to Warren, and Clark then discharged the $700 mortgage. This transaction defrauded no one, nor did it tend to defraud any one. It was a valid one between the parties, especially when fully executed, and no one of the parties to it questions its validity. Under the arrangement the legal title of Warren Gilbert to the land through the quitclaim deed from William G. inured to the benefit of Clark under his mortgage. To hold otherwise would be for the Court to turn a *bona fide* transaction between the parties, which they fully executed in good faith, into a fraudulent one, by which Clark would lose his lien by virtue of his $700, and the debt secured thereby, inasmuch as he surrendered up the note as paid. This we cannot do, at the instance of a third person not a party to the transaction, and not injured or in any way affected by it.

Whatever claims the execution creditor had by virtue of his levy accrued subsequently to the deed from William G. to Warren Gilbert, and when the rights of all parties under the agreement for the sale of the land had become vested. A quitclaim deed, under the circumstances of this case was as ample to carry out the intention of the parties as would have been a warranty deed, and it inured to the benefit of Clark, the mortgagee, as fully as if the

mortgage had contained covenants of warranty of title.

After the consummation of the oral contract of purchase by the deed to Warren Gilbert, he could not be heard to deny the validity of the Clark mortgage for $19,000, or that a sale under a foreclosure of it would convey the legal title. So neither can an execution creditor of Warren Gilbert deny the validity of the mortgage, or the binding force of a sale under it. The mortgage lien took effect as soon as Warren Gilbert acquired the legal title, and takes precedence over subsequent levies of the creditors of Warren Gilbert.

The judgment is affirmed.

The other Justices concurred.