MELVIN L. GRAY AND DAVID K. FERGUSON, EXECUTORS, ETC., v. MARY E. FRANKS ET AL.

*Mortgage—Foreclosure—Parties—Examination of witnesses—After-acquired title—Will—Foreign executors.*

1. The failure to allege that the children of a mortgagor, who are joined as defendants in a suit to foreclose the mortgage under an allegation that they claim rights as subsequent purchasers, incumbrancers, or otherwise, are his heirs at law, will be remedied by amendment in the appellate court.

2. A demand for the examination of the witnesses in a chancery suit in open court, not made within ten days after the cause is at issue, is of no force.[1]

3. A defendant who has failed to make such a demand is not entitled to the benefit of one made by a co-defendant, who may have waived it, or as to whom the suit has been discontinued.

_____
[1] See Chancery Rule No. 124.

4. An action brought by foreign executors before the will is probated in this State is made good by subsequent probate before hearing. *Richards v. Pierce*, 44 Mich. 444.

5. The statute providing for the probate of foreign wills does not require any bond on the part of the executor.

6. A mortgage was executed by the parties in the full belief that it covered, in addition to three small lots worth only a small portion of the sum secured, adjacent hotel property, which constituted the chief value of the supposed security, and of which the mortgagor was, and for many years had been, in the actual possession, claiming title, which failed, and he secured a quitclaim deed of the premises, perfecting his supposed title; which subsequently acquired title is held to have inured to the benefit of the mortgagee under his mortgage.

Appeal from Mackinac. (Steere, J.) Argued April 24, 1891. Decided June 20, 1891.

Bill to foreclose a mortgage. Defendant Mary E. Franks appeals. Decree affirmed, except as to order of sale. The facts are stated in the opinion.

*Watts S. Humphrey* (*Oscar Adams*, of counsel), for complainants.

*Ed. E. Kane*, for appellant, contended:

1. The heirs, being the owners of the equity of redemption, were necessary parties; citing *Abbott v. Godfroy's Heirs*, 1 Mich. 180, 181; *Insurance Co. v. Brown*, 11 Id. 265, 274; *Reed v. Marble*, 10 Paige, 413; 2 Jones, Mort. § 1414; and their interest and relation to the mortgagor should be shown by proper averments.

2. The general allegation under Chancery Rule No. 91 is not sufficient to put in issue rights paramount to the mortgage; citing *Wurcherer v. Hewitt*, 10 Mich. 454; and can only be used when the facts of being a subsequent purchaser or incumbrancer appear of record; citing *Dawson v. Bank*, 15 Mich. 495; *Comstock v. Comstock*, 24 Id. 39; *Summers v. Bromley*, 28 Id. 126.

3. Foreign executors cannot, by virtue of the foreign appointment, sue as such in this State; citing *Thayer v. Lane*, Walk. Ch. 202; *Vickery v. Bier*, 16 Mich. 53; *Sheldon v. Rice Estate*,

30 Id. 301; *Dickinson v. Seaver*, 44 Id. 629; *Mower's Appeal*, 48 Id. 447; *Reynolds v. McMullen*, 55 Id. 568.

4. The mortgage contains no covenants of warranty, and there is the same distinction between mortgages with and without such covenants as between warranty and quitclaim deeds as to subsequently acquired title; citing Jones, Mort. § 679; *Tefft v. Munson*, 63 Barb. 37, 57 N. Y. 97; and in this State, if the mortgage does not contain such covenants, it does not cover lands the title to which is afterwards acquired by the mortgagor, and in which he had no legal or equitable title when the mortgage was given; citing *McClure v. Holbrook*, 39 Mich. 43; *Brown v. Phillips*, 40 Id. 265; *Frost v. Society*, 56 Id. 69; *Brennan v. Eggeman*, 73 Id. 659.

GRANT, J. This is a bill filed by complainants as executors of the will of one Ralph Sellew, to foreclose a mortgage executed by Edward ·A. Franks and Mary E. Franks, his wife. Decree was rendered for complainants, and the defendant Mary E. Franks alone appeals.

Several objections are raised to the right of the complainants to maintain the suit, which will be first considered.

1. Edward A. Franks, the mortgagor, died before the commencement of this suit. His children were made parties defendant, but the bill did not allege them to be his heirs at law. It alleges that they and other persons mentioned "have or claim to have rights and interests in the premises described in said indenture of mortgage, or in some part or parts thereof, as subsequent purchasers or incumbrancers or otherwise." The appellant is not in position to raise this question. Her rights are not affected, even if the allegation were necessary. The real defendants, however, who might raise this question, could not be misled, and, even if such a formal allegation were necessary, the amendment would be allowed in this Court.

2. The defendant contends that she was entitled to a hearing upon proofs taken in open court. She made no

demand herself, but two of the defendants, who were made parties on account of supposed subsequently acquired interests, did demand the examination of witnesses in open court. The bill, as to them, was subsequently dismissed by consent, and the case was then referred, by an order made in open court, to a circuit court commissioner to take the proofs.

This position of the appellant is not tenable for two reasons:

1. The demand for such an examination was not made within 10 days after the cause was at issue, and therefore was of no force. How. Stat. § 6647.

2. Having made no demand herself, she is not entitled to the benefit of such demand by another, who may have waived it, or as to whom the suit has been discontinued.

3. Mr. Sellew lived in St. Louis, Mo., where he died, and where his will was probated; and the complainants accepted the trust, and became duly qualified. The bill was filed before this will had been proved in Michigan. Subsequently, and before the hearing, the will was duly proved in the probate court of the county Mackinac, and an exemplified copy of such probate put in evidence. Appellant insists that complainants could not bring suit before a probate of such will in Michigan. This point, we think, is ruled by the case of *Richards v. Pierce*, 44 Mich. 444. It was there held, citing numerous authorities, that an action brought *before* probate is made good by subsequent probate before the hearing.

4. It is next insisted that the probate proceedings in the probate court for Mackinac county are void for several reasons, only one of which we deem it important to notice, viz., that no bond was given in Michigan by the executors.

The statute providing for the probate of foreign wills

86 MICH.—25.

in this State does not require any bond on the part of the executor. It would be a wise precaution on the part of probate courts to require it. The letters issued to complainants in this State recite that they have given a bond. Such a bond is not necessary to protect the interests of the defendants in this case. They could have applied to the court in chancery for security for costs. They are not prejudiced, and we do not think equity requires that such technical errors should, under the circumstances, prevail.

5. The main contest in the case arises over the description of the premises mortgaged. The mortgage was executed December 16, 1868, and the description of the mortgaged property is as follows:

" All the lands and premises situated in the county of Mackinac and State of Michigan, known as the property described and included in a deed made and executed by the American Board of Commissioners for Foreign Missions, November 9, 1855, to the aforesaid Edward A. Franks, and recorded in the office of the register of deeds and mortgages in and for the said county of Mackinac on the 22d day of May, A. D. 1856, in Book 1 of Deeds, on pages 208, 209, 210, and 211, to which deed reference is hereby made as a part of this indenture; except a balance due the aforesaid board of commissioners of the amount of $1,050, and to Coyree & Strong, of the city of Detroit, another claim of $1,000, both of which claims are secured by mortgage on the above premises."

These premises were purchased by Mr. Franks from the American Board of Commissioners for Foreign Missions by deed dated November 9, 1855. In that deed the premises are described as follows:

" Beginning on the shore of Lake Huron, between this lot and a street; thence north, eight degrees and forty minutes east, 610 feet; thence south, seventy-six degrees east (76 degrees east), two hundred feet to unconceded land; thence south, eight degrees forty-five minutes west

(8–45 west), five hundred and sixteen feet and four-tenths of a foot to the shore of Lake Huron; thence along the border of said lake, south, seventy-eight degrees west (78 degrees west), two hundred and twelve feet and nine-tenths of a foot to the place of beginning; reserving one hundred feet in front for the use of a road or public highway; reference for a more particular description being had to a patent to Bonape, and deed from Bonape to the American Board of Commissioners for Foreign Missions, on record in the registry office for the county of Michilimackinac.

"Also a parcel of land situate in the borough of Michilimackinac aforesaid, and being the same lot which is said to have been surveyed by Aaron Greeley on the 20th of October, 1810, but the certificate of which survey, as ascertained from the books of the land-office at Detroit, bears date the 20th of October, 1819, as having been made on claim of Baptiste Bertrant, containing one hundred and three thousand six hundred and fifty-two square feet, as recorded in Book B, page 200, in a deed from William M. Ferry and wife to said American Board, in the registry office for said county of Michilimackinac; reference being thereto had.

"Also the following lands in said Michilimackinac, bounded as follows, to wit: Westerly on a lot belonging to Mrs. Mary Fisher; northerly on land of the United States; easterly by lands patented to Daniel Bonape; southerly on a road laid down in the borough plat, which separates this lot from the claim reserved to Joseph Valencoer. This lot was surveyed in 1829 by John Mullet, and on which survey a patent issued, and to which reference is made for course and distance, and is the same purchased from Joseph and Jane Roulette, 25th of August, 1829, and recorded in said county of Michilimackinac in the register's office, in Book B, page 35; reference being had thereto. Together with the Mission House and other buildings, now and lately in the occupation of E. A. Franks, as a public house, and which were erected by the said board, and under their direction, by permit from the United States and their agents at Michilimackinac, and their right to pre-emption under the laws of the United States."

This latter description is the one contained in the decree. Appellant insists that three small lots, numbered

13, 14, and 705, are the only ones covered by the mort-
gage, which was given to secure the loan of $6,000, but
that the adjoining premises, including 16 acres and a
large hotel, are not covered by it.   These three lots were
at the time worth but a small part of the money loaned.
Upon receiving the deed November 9, 1855, Franks took
possession of these premises, including the hotel, and
occupied the same until his death, which occurred Jan-
uary 24, 1881.   Some years afterwards it was discovered
that the title to the 16-acre tract had never been acquired
by Mr. Franks' grantor or by him, but that it belonged
to what is known as the "Military Reservation," the
title being in the United States.   The military author-
ities upon the island of Mackinac attempted to obtain
possession of the premises.   This was resisted by Mr.
Franks, who finally received a lease from the United
States government for the premises upon the payment of
the nominal rent of $10 per year.   This lease was dated
October 20, 1870, and contained the following descrip-
tion:

"Beginning at a post at the north-east corner of the
lane; thence north-east fourteen hundred and sixteen
(1,416) feet to a fence near Fully Rock; thence south-
east two hundred and fifty (250) feet to the shore of Lake
Huron; thence south-west along said shore thirteen hun-
dred (1,300) feet; thence north three hundred and thirty-
three (333) feet to a post; thence north thirty-four (34)
feet to the place of beginning, containing about sixteen
acres (16)."

Mr. Franks appealed to Congress, and an act was
finally passed authorizing the land to be conveyed to
him for the sum of $200.   The Secretary of the Treas-
ury, in pursuance of this act, executed to him a quit-
claim deed covering this tract, thus securing to him the
absolute title to the land.

The question is, did this subsequently acquired title

inure to the benefit of Mr. Sellew under his mortgage? The proofs are convincing that the mortgage was executed by both parties in the belief that it covered these premises, of which Mr. Franks was, and had been for many years, in the actual possession, claiming title. The testimony, both oral and written, including letters which passed between Mr. Sellew and Mr. and Mrs. Franks, and other papers executed by them, leave no doubt upon this point. The chief value consisted in the 16-acre tract and the buildings situated thereon. We see no escape from the conclusion that the subsequently acquired title inured to the benefit of Sellew under his mortgage. It is unnecessary to review the testimony.

The decree of the court below is affirmed, with costs.

Some of the land has been sold, and upon the foreclosure sale it must be sold in parcels in the inverse order of alienation.

The other Justices concurred.