## NAPPER *v*. FITZPATRICK.

1. MORTGAGES—COVENANTS OF WARRANTY—TAX TITLE—REDEMPTION. Where defendant gave to complainant a mortgage containing a warranty of title and also a warranty against previous incumbrances, and there was at the time the mortgage was given an outstanding tax on the premises which was a lien thereon, and which afterwards ripened into a title in the hands of the holders, defendant's subsequent repurchase of the premises from the holders of the tax title operated, in law, as a redemption which should inure to complainant's benefit, notwithstanding defendant's title had been cut off by mortgage foreclosure.

2. SAME—EQUITY—REDEMPTION.
> But where the evidence shows that complainant had collected usurious interest from defendant in excess of the amount of the original tax; that he learned of the existence of the tax title at least a year before the writ of assistance was asked for, and had ample opportunity to adjust it, but voluntarily chose to risk the tax being declared invalid, the equity court will not relieve him from the consequences of his choice. OSTRANDER, J., dissenting.

Appeal from Alpena; Emerick, J. Submitted June 12, 1916. (Docket No. 45.) Decided December 21, 1916.

Bill by Robert Napper against John E. Fitzpatrick for a decree declaring a repurchase to be a redemption of certain premises, and other relief. From a decree for defendant, complainant appeals. Affirmed.

*O'Brien & Francis* (*Charles D'Aigle*, of counsel), for complainant.

*I. S. Canfield*, for defendant.

BIRD, J. Defendant was the owner of the north half of the northwest quarter of section 33, in township 32 north, range 6 east. He mortgaged it to plaintiff on the 7th day of March, 1894, to secure the repayment of a loan of $1,200 running two years at 8 per cent. The mortgage was afterwards foreclosed, and the premises were bid in by the mortgagee for the amount due upon the mortgage, together with the expenses of sale. Defendant did not redeem the premises, and the equity of redemption expired on April 9, 1899. Following this plaintiff leased the premises to defendant for one year with the privilege of two, from April 13, 1899, at a yearly rental of $125. Defendant paid the first year's rent, but refused to pay further rent, because in August, 1899, Brown and Cullen, of Flint, made claim to the premises by force of a deed from

the State for the taxes of 1893. It was then learned
that the premises had been sold in December, 1895,
and bid off to the State, and afterward sold by the
auditor general to Brown and Cullen in August, 1897.
Plaintiff refused to purchase or recognize the tax deed,
and a writ of assistance was applied for and granted
to Brown and Cullen in the Alpena circuit court,
and afterwards affirmed by this court. *Brown* v.
*Napper*, 125 Mich. 117 (83 N. W. 999). In March,
1901, after his lease with plaintiff had expired, the
defendant accepted a lease from Brown and Cullen.
He had possession of the premises under this lease
until December, 1901, when he purchased them upon
contract for $1,200. While occupying the premises
under this land contract plaintiff commenced a suit
in ejectment against defendant and Brown and Cullen.
This suit was decided adversely to plaintiff. It was
afterwards appealed to this court and affirmed. *Nap-
per* v. *Fitzpatrick*, 139 Mich. 139 (102 N. W. 642).
Afterward, and on November 26, 1912, Brown and
Cullen deeded the premises to defendant, and he gave
them a purchase price mortgage thereon for $881, the
balance due upon his contract. In July, 1913, these
proceedings were brought to have defendant's repur-
chase of the premises declared a redemption of the
premises and to have plaintiff's lien reinstated thereon.

The chancellor who heard the case refused plaintiff
relief on the ground that the equities of the case were
not with him. Plaintiff appeals from the decree.

1. The contention of plaintiff in brief is that de-
fendant gave him a mortgage on his premises con-
taining a warranty of title, and also a warranty against
previous incumbrances; that when the mortgage was
given the taxes for 1893 were a lien thereon; that by
reason of defendant's ownership and possession of the
premises the law raised a duty upon his part to pay
to the State the taxes, and his mortgage contract raised

a like duty to plaintiff; that defendant's failure to discharge this duty which he owed to the State and to plaintiff resulted in a sale of the title to a stranger, and that a repurchase of that title by defendant should in equity be construed as a redemption rather than a repurchase, and thereby inure to plaintiff's benefit. This position is based upon the general rule of law:

"That a purchase made by one whose duty it was to pay the taxes shall operate as payment only." Cooley on Taxation (2d Ed.), 501, and cases cited.

Both counsel recognize this rule and both concede that the principle has been applied to the relation of mortgagor and mortgagee, but defendant insists that the rule does not apply in the present case, because defendant's title was cut off by the mortgage foreclosure, and because the tax title was bought and held by a stranger, and afterwards reconveyed to defendant. There is reason in this distinction, and it is supported by the weight of authority (37 Cyc. p. 1350), but the courts of Michigan, Iowa, and West Virginia appear to have extended the inhibition to a repurchase from a stranger in whom the title matured. *Dubois* v. *Campau*, 24 Mich. 360; *Sorenson* v. *Davis*, 83 Iowa, 405 (49 N. W. 1004); *Battin* v. *Woods*, 27 W. Va. 58. And this appears to be the rule even though the mortgagor's title has been in the meantime divested by foreclosure proceedings. *Magner* v. *Insurance Co.*, 30 La. Ann. 1357.

We must conclude that, if the case were to be determined solely upon the legal question, plaintiff's contention would have to prevail.

2. The opinion of the chancellor indicates that he reached the same conclusion on the legal question, but he refused to grant plaintiff relief because he found the merits against him and in favor of the defendant. In his opinion he does not specify the particular facts upon which he based his refusal, but an examination

of the record discloses a state of facts which obviously
influenced his conclusion. The record discloses that
the mortgage in question provided on its face for a
usurious rate of interest. It stipulated for the pay-
ment of 8 per cent. annual interest, and placed an
obligation upon the mortgagor to pay all taxes as-
sessed on the mortgage. Furthermore, plaintiff's own
testimony tends to show that, after providing for a
usurious rate of interest in the mortgage, he received
defendant's promissory note for 2 per cent. additional
interest, amounting to $24, and that this note was
afterwards paid. It is also shown that in April, 1896,
defendant gave plaintiff another mortgage on another
piece of land for two years' interest on the principal
mortgage, and included therein $33.60 in excess of the
two years' interest at 8 per cent. When plaintiff was
asked about this excess he was unable to account for it.

The testimony of the parties is in conflict as to when
plaintiff first learned of this tax title. We think the
record fairly shows, however, that plaintiff learned
of it at least a year before the writ of assistance was
applied for; that he had ample opportunity to adjust
it, and defendant, who was in straitened circum-
stances, urged him to do so, and promised him that
he would repay it if he would extend the time for re-
demption, but plaintiff refused to pay or recognize the
tax title, although at that time he had collected from
defendant usurious interest in a sum larger than the
amount of the original tax. Considering this manner
of dealing with the defendant, together with the great
lapse of time since the mortgage was given, we think
complainant is not in a very good position to invoke
the aid of a court of equity to reinstate his interest
in the premises—an interest which he himself refused
to redeem by the payment of a small sum of money
which he could have paid and added to his mortgage.
He was willing to gamble on the chance of the tax

being declared invalid, but when he loses he invokes the aid of the court to reinstate his interest in the premises. Courts of equity will not ordinarily relieve a party from the consequences of a risk which he voluntarily assumes. *McCredie* v. *Buxton,* 31 Mich. 383. We agree with the chancellor that plaintiff's equities are not such as to call for equitable relief.

The decree of the trial court is affirmed, with costs to the defendant.

STONE, C. J., and KUHN, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred with BIRD, J.

OSTRANDER, J. In my opinion, the complainant is entitled to relief upon the ground that equity follows the law.