## JACOBSEN *v.* NIEBOER.

1. **ESTOPPEL—MORTGAGES—WARRANTY OF TITLE.**
    Mortgage, securing payment of a promissory note, which expressly mortgaged and warranted title of land described in mortgage, would have been good as to mortgagors if they subsequently acquired title, even though they had no interest in the land at the time the mortgage was given.

2. **TAXATION—NOTICE OF SALE—MORTGAGES.**
    Whether or not mortgagees and mortgagors of a parcel of real estate had actual knowledge of a tax lien or tax sale is immaterial as the public records are legal notice of the tax.

3. ESTOPPEL—MORTGAGES—WARRANTY OF TITLE—AFTER-ACQUIRED PROPERTY.

   A mortgage with covenants of warranty carries with it any title to the mortgaged premises subsequently acquired by the mortgagor and he and those claiming under him are estopped from asserting title to such premises against the mortgagee and those claiming under him.

4. TAXATION—PURCHASERS AT TAX SALE.

   One under a legal duty at time of sale to pay the taxes for which the land is sold or who was previously under such obligation cannot be a purchaser at the tax sale, nor subsequently acquire the tax title, with any other legal effect than simply to pay the taxes or redeem the land so far as is concerned the interests of anyone who would otherwise be injured by the purchaser's failure to pay the taxes in accordance with his duty, as the purchaser would otherwise be taking advantage of his own wrong.

5. MORTGAGES—TAX TITLE.

   One whose title is obtained from an execution purchaser is in such privity with the defendant in the execution that if the latter has mortgaged the land he cannot let it be sold for taxes and bid it in so as to cut off the mortgagee's rights, nor can he cut them off by taking tax leases.

6. TAXATION—TITLE OF PURCHASER AT TAX SALE.

   As between the State and the original owner, the title to land sold for nonpayment of taxes becomes absolute in the State and a third-party purchaser under a tax deed acquires a clear and unincumbered title (Act No. 155, § 9, Pub. Acts 1937).

7. SAME—MORTGAGOR AS PURCHASER AT TAX SALE.

   Rule that as between State and original owner the title to land sold for nonpayment of taxes becomes absolute in the State and a third-party purchaser under a tax deed acquires a clear and unincumbered title does not apply as against the mortgagee when the mortgagor is the purchaser of the tax deed as the mortgagor-purchaser in effect redeems the land from tax sale and the mortgage remains in full force and effect as between him and the mortgagee (Act No. 155, § 9, Pub. Acts 1937).

8. SAME—CONTRACTS—DEFAULT—EQUITY.

   One who is obligated by contract with another to pay taxes may not, through his own default, obtain an advantage over the other.

9. Mortgages—After-Acquired Title.

    After-acquired title of mortgagor who warrants or covenants that he has title which he purports to convey will inure to the mortgagee or to his benefit by way of estoppel.

10. Same—Scavenger Sale—Mortgagors' Redemption—Estoppel.

    In chancery suit to foreclose a mortgage in which mortgagors expressly mortgaged and warranted to mortgagees the title to the land described therein and mortgagors covenanted to pay all taxes, where at time the mortgage was executed there was default in the payment of taxes and the land was sold to a third party under the scavenger act without defendants' knowledge, defendants repurchased the property from the State land office board and asserted title in themselves was free from plaintiffs' mortgage, equity would consider mortgagors had redeemed the land by matching highest bid at scavenger sale and they would be estopped from claiming property was not incumbered by plaintiffs' mortgage (3 Comp. Laws 1929, § 14372; Act No. 155, §§ 7, 9, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939).

    Sharpe, C. J., dissenting.

Appeal from Ottawa; Miles (Fred T.), J. Submitted April 11, 1941. (Docket No. 58, Calendar No. 41,557.) Decided September 2, 1941.

Bill by Ben Jacobsen and Alyda Jacobsen against Jacob Nieboer and Johanna Nieboer to foreclose a mortgage. Decree for plaintiffs. Defendants appeal. Affirmed.

*Jarrett N. Clark,* for plaintiffs.

*Elbern Parsons,* for defendants.

*Brownell & Gault, amici curiae.*

Sharpe, C. J. (*dissenting*). This is a suit in chancery to foreclose a mortgage. The material facts are not in dispute. Defendants, who are husband and wife, were the owners of a parcel of real estate. On January 19, 1939, they executed a pro-

missory note for $750 secured by a real-estate mort-
gage.    Plaintiffs are the mortgagees.    It appears
that at the time the above mortgage was executed
the 1933 taxes were in default; and as provided in
the general property tax law, 1 Comp. Laws 1929,
§ 3451 *et seq.* (Act No. 206, § 60 *et seq.,* Pub. Acts
1893), as amended by Acts Nos. 91, 114, and 325,
Pub. Acts 1937, the property was sold to the State
of Michigan at the 1938 tax sale.    Defendants had no
actual knowledge of the sale and did not redeem the
property.

The State sold the property at the 1940 tax sale
to a third party as is provided by Act No. 155, Pub.
Acts 1937, as amended by Act No. 244, Pub. Acts
1939* (commonly known as the scavenger act).
When defendants had been advised of such sale
they entered into an agreement on August 8, 1940,
with the State land office board for the repurchase of
the property.    In the meantime, defendants had de-
faulted in making payments on the mortgage and
plaintiffs declared the whole amount due; and on
October 14, 1940, began a suit in chancery to fore-
close.    The trial court held plaintiffs' mortgage
good and entered a decree of foreclosure.

Defendants appeal and contend that when, on
August 8, 1940, they entered into the contract to
purchase the property from the State land office
board, title to the property was absolute in the State
of Michigan and not subject to any liens.

Prior to the adoption of the so-called scavenger
act it was the rule that when a third person pur-
chased a tax title, he acquired a fee simple title and
all incumbrances and liens were cut off.    He ac-
quired a new title and not the title of the original
owner.    In *Robbins* v. *Barron,* 32 Mich. 36, 39, we

* See Comp. Laws Supp. 1940, § 3723-7, Stat. Ann. 1940 Cum.
Supp. § 7.957.—REPORTER.

said: "A tax title, if valid, destroys and cuts off all liens and incumbrances previously existing against the land."

It is urged by plaintiffs that defendants, as mortgagors, warranted their title to the property and having arranged at a future date to acquire title to this property, the mortgage attached to the future acquired interest. An *amicus curiae* brief filed with the permission of this court contends that the mortgagor, by entering into a contract with the State land office board to purchase the premises, merely redeemed his premises from taxes and the mortgage lien remains in full force and effect, subject to the balance due the State of Michigan on its contract.

This latter brief relies upon *Brown* v. *Avery,* 119 Mich. 384, 387, where this court quoted the following from *Connecticut Mutual Life Insurance Co.* v. *Bulte,* 45 Mich. 113:

" 'It is conceded that there are a great many cases in which parties standing in particular relations to the land, or to the owner or other person interested therein, are not suffered to acquire tax titles and rely upon them as against other claimants. Some of those are very plain, and it is quite unnecessary to do more than name them. A tenant, for example, who has covenanted to pay the taxes, cannot be suffered to neglect this duty, and then acquire a tax title which shall cut off the title of his landlord. Neither shall the purchaser in possession under an executory contract be allowed to cut off the rights of his vendor by a like purchase, nor a mortgagor that of his mortgagee. A tax purchase made while such a relation exists is made in wrong; and the law in circumvention of dishonesty will conclusively presume that it was made in the performance of duty, and not in repudiation of it.' "

And *Tyler* v. *Burgeson,* 229 Mich. 268, 270, where we said:

"Defendant cannot defeat plaintiff's title by setting up this title which he acquired in his son's name while he was in possession of the premises under the terms of a contract by and in which he had agreed to pay the taxes, such title having come into existence solely by his own default, which default set the machinery of the State in motion resulting and ripening into the title he now claims. This is well settled by numerous decisions of this court but a fragment of which we cite."

The above authorities correctly interpret the tax law in effect at the time such opinions were rendered, but the answer to the problem in the case at bar must largely come from a proper interpretation of our present tax law, *i.e.*, Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939.

In *Stickler* v. *State Land Office Board*, 297 Mich. 271, we held that the title to tax-sale lands became vested in the State of Michigan on November 3, 1939, upon the expiration of the equity of redemption from the 1938 tax sale for taxes for 1935 and prior years and said:

"By virtue of said statute (Act No. 206, Pub. Acts 1893, 1 Comp. Laws 1929, § 3459, as amended by Act No. 114, Pub. Acts 1937) and decree, title to the parcel of land here involved became absolute in the State upon the expiration of the period of redemption and 'all taxes and other liens and incumbrances, of whatever kind or nature, except unpaid tax or assessment liens or city bids of any municipality collecting its own delinquent taxes and assessments upon lands for which application shall have been made to the State land office board or the director of conservation as the case may be for the withholding of such lands from sale,' were thereby cancelled. Section 67, as amended by Act No. 114."

Section 9 of the scavenger act provides:

"Any quitclaim deed or deeds executed by the board shall convey title in fee to land vested in the board under the provisions of this act, free from any incumbrances, except as herein otherwise provided."

From the above section it must follow that a former owner of the land purchased by the State may repurchase the land and be in the same position as any other purchaser. See *Grand Rapids Trust Co.* v. *Doctor,* 222 Mich. 248. Nowhere in the act do we find any language indicating that the purchaser of the land takes anything less than that which the State owned even though such purchaser may be a former owner of the land.

In the case at bar, plaintiffs' remedy, if any, is in a court of law upon the promissory note. The decree of the trial court should be reversed, with costs to defendants.

Boyles, J. I do not concur with the Chief Justice as to the effect to be given to the so-called scavenger act (Act No. 155, Pub. Acts 1937, as amended by Act No. 244, Pub. Acts 1939 [Comp. Laws Supp. 1940, § 3723-1 *et seq.,* Stat. Ann. 1940 Cum. Supp. § 7.951 *et seq.*]). The provision in this act that a State tax deed cuts off existing liens and incumbrances is substantially the same as that in previous tax laws under which we have held that a mortgagor cannot take advantage of his own default in paying taxes and defeat the mortgage lien by subsequently obtaining a tax title. When the defendants herein gave the mortgage in question they held such a title as could be mortgaged; the State's title had not become absolute, the period of redemption not having expired. However, the mortgage would have been good as to the mortgagors if they subsequently acquired title, even though they had no interest in

the land at the time the mortgage was given. *Gray* v. *Franks,* 86 Mich. 382; *Caple* v. *Switzer,* 122 Mich. 636. Whether the parties had actual knowledge of the tax lien or tax sale is immaterial. The public records were legal notice of the tax and no question is raised as to the legality of the tax, the tax sale, or the notices thereof.

By the mortgage in question, the defendants expressly *mortgaged and warranted* to the plaintiffs the title to the land described therein. The legality of the mortgage and the warranty is not disputed.

"Any mortgage of lands worded in substance as follows: 'A. B. mortgages and warrants to C. D. (here describe the premises) to secure the repayment of' (here recite the sum for which the mortgage is granted, or the notes or other evidence [evidences] of debt, or a description thereof, sought to be secured, also the date of the repayment), the said mortgage being dated and duly signed, sealed and acknowledged by the grantor, shall be deemed and held to be a good and sufficient mortgage to the grantee, his heirs, assigns, executors and administrators, with warranty from the grantor and his legal representatives, of perfect title in the grantor, and against all previous incumbrances." 3 Comp. Laws 1929, § 13324 (Stat. Ann. § 26.574).

The mortgage also contained the usual covenant by the mortgagors to pay all taxes. Defendants have defaulted in both of these express covenants to warrant the title and to pay the taxes. By virtue of this default, the foundation was laid on which defendants have acquired a subsequent tax title in the land. They now seek to escape the result of their own default and gain advantage by it.

"It is universally accepted that a mortgage with covenants of warranty carries with it any title to the mortgaged premises subsequently acquired by

the mortgagor, and that he and all persons claiming under him are estopped from asserting any title to those premises against the mortgagee and those claiming under him. And the doctrine applies when the warranty is such as the law implies from the employment of words made by statute sufficient to import a warranty." 19 R. C. L. p. 395.

"The general principle running through all the cases is this: One who is under a legal obligation at the time of sale to pay the taxes for which the land is sold, or who was previously under such obligation, and, though it may have ceased, yet the purchaser would be taking advantage of his own wrong, cannot be a purchaser at the tax sale, nor subsequently acquire the tax title, with any other effect than simply to pay the taxes or redeem the land so far as regards the interests of anyone who would otherwise be injured by said purchaser's failure to pay the taxes in accordance with his duty." 16 L. R. A. (N. S.), p. 122.

In *Connecticut Mutual Life Insurance Co.* v. *Bulte,* 45 Mich. 113, 120, Mr. Justice Cooley stated the general rule of law as follows:

"A tax purchase made while such a relation exists is made in wrong; and the law in circumvention of dishonesty will conclusively presume that it was made in the performance of duty, and not in repudiation of it."

One whose title is obtained from an execution purchaser is in such privity with the defendant in the execution that if the latter has mortgaged the land he cannot let it be sold for taxes and bid it in so as to cut off the mortgagee's rights, nor can he cut them off by taking tax leases. Under these circumstances, this court said:

"It was the mortgagor's duty to pay the taxes remaining unpaid while he owned the property, and

when the defendant acquired all the mortgagor's interests in the property it became his duty to discharge the unpaid taxes standing against the property, which was redeemable, and he could not, by neglecting and refusing so to do, take an assignment of the certificates of sales and hold them till redemption had expired, and thereby obtain the deed of the State upon such certificates, and thus cut off the mortgagee's rights under his mortgage." *Fells* v. *Barbour,* 58 Mich. 49, 54.

In *Brown* v. *Avery,* 119 Mich. 384, the mortgagee represented in good faith to one who assumed the mortgage upon purchase of the property that the taxes were paid, yet the mortgagee was held not estopped from enforcing his mortgage as against a tax title subsequently acquired by the purchaser, based upon an existing unpaid tax.

"Where a mortgagor negotiates the purchase of a tax title, taking a conveyance to his brother-in-law under an agreement by which the latter contracts to sell to the mortgagor's wife upon the repayment of the purchase price, and which he has in large part paid, the transaction will be considered one in the interest of the mortgagor.

"In a suit to foreclose the mortgage, the holder of the tax title cannot defend on the ground that the wife was not bound by the covenants in the mortgage, and therefore not incapacitated from purchasing the tax title." *Dorenberg* v. *Ockerman* (syllabi), 130 Mich. 23.

"The plaintiff in this case, whether owning the legal title or not, at the time of giving this mortgage or subsequently, executed the same, therein representing that it owned the property mortgaged, embodying in the instrument a warranty of title. If plaintiff did not have the title at the time of giving the mortgage, and subsequently acquired it, under

such warranty, the subsequently acquired title would redound to the benefit of the mortgagee.

" 'Where one assumes by his deed to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title, and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance.' *Smith* v. *Williams,* 44 Mich. 240." *West Michigan Park Association* v. *Railroad Co.,* 172 Mich. 179, 187.

"Where defendant gave to complainant a mortgage containing a warranty of title and also a warranty against previous incumbrances, and there was at the time the mortgage was given an outstanding tax on the premises which was a lien thereon, and which afterwards ripened into a title in the hands of the holders, defendant's subsequent repurchase of the premises from the holders of the tax title operated, in law, as a redemption which should inure to complainant's benefit, nowithstanding defendant's title had been cut off by mortgage foreclosure." *Napper* v. *Fitzpatrick* (syllabus), 194 Mich. 175.

A vendee may not defeat his vendor's title by setting up a tax title which he acquired in his son's name while he was in possession of the premises under a land contract requiring him to pay the taxes; his title having come into existence solely through his own default. *Tyler* v. *Burgeson,* 229 Mich. 268.

The justice and equity of these decisions is not a subject for dispute. Does the scavenger act require that they now be discarded? Under previous tax laws, the rights of the *owner* of tax-delinquent land came to an end when the title of the State *became absolute,* but the rights of third persons were not

completely ended if the owner again acquired title
from the State. Section 7 of the scavenger act (Act
No. 244, Pub. Acts 1939) now provides (with cer-
tain exceptions not material here) that the State
shall offer such lands for sale to the highest bidder
after title *has become absolute* in the State. The
former owner may, upon application made within
30 days, meet the highest bid and thereby acquire
the State's title. There is no sound reason why he
should not take such title subject to his own former
contractual obligations, unless the act itself requires
a contrary result.

While the act has been before this court, the ques-
tion in the case at bar has not been before us for
decision. In *Stickler* v. *State Land Office Board,*
297 Mich. 271, we held that the plaintiffs could not
compel the State land office board to give them a
deed or land contract covering certain lands on the
ground of having the right to meet the highest bid as
having an interest in the land at the time of the tax
sale. The plaintiffs had no interest at the time of
the tax sale and, therefore, acquired no right to
meet the highest bid. In *Redford Union Schools* v.
*State Land Office Board,* 297 Mich. 535, we held that
the right to meet the highest bid at the scavenger
sale is limited to parties having an interest in the
land sold at the tax sale when the State bid in the
property.

Section 9 of the scavenger act (Act No. 155, Pub.
Acts 1937) provides:

"Any quitclaim deed or deeds executed by the
board shall convey title in fee to land vested in the
board under the provisions of this act, free from any
incumbrances, except as herein otherwise pro-
vided."

Substantially the same provision has been in the
tax law of Michigan since an early date. The earlier

statutes, in effect when the above cases were decided, contained a similar provision. The Revised Statutes of 1838, part 1, title 5, chap. 6, § 19, provided as follows:

"The auditor general shall, upon the presentation of the certificate, execute to the purchaser, his heirs or assigns, in the name of the people of this State, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple."

See, also, footnote to Stat. Ann. § 7.117.

Act No. 206, § 72, Pub. Acts 1893 (1 Comp. Laws 1897, § 3895 [1 Comp. Laws 1929, § 3464]), provided:

"Such deeds shall convey an absolute title to the land sold, and *be* conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off."

Act No. 290, Pub. Acts 1931 (Stat. Ann. § 7.117), provides:

"Such deeds shall convey an absolute title to the land sold, and *the* conclusive evidence of title, in fee, in the grantee, subject, however, to all taxes assessed and levied on such lands subsequent to the taxes for which the same was bid off."

Section 67 of Act No. 206, Pub. Acts 1893, as amended by Act No. 114, Pub. Acts 1937,* providing that the decree entered by the chancery court "shall be substantially in the following form," states:

"It is further ordered, adjudged and decreed that title to each parcel of land ordered in this decree to be offered for sale, and which parcel of land is bid in

---

* Later amended by Act No. 282, Pub. Acts 1939.—REPORTER

at such sale to the State, shall become absolute in the State of Michigan on the expiration of the period of redemption from such sale, and all taxes and other liens and incumbrances, of whatever kind or nature, except unpaid tax or assessment liens or city bids of any municipality collecting its own delinquent taxes and assessments upon lands for which application shall have been made to the State land office board or the director of conservation as the case may be for the withholding of such lands from sale, cancelled as of such date, unless any said parcel of land shall be redeemed."

The similarity between these provisions and the previous statutes is quite apparent. While no express provision is found in the prior acts to that effect, this court has uniformly held under the prior statutes that an owner and mortgagor could not cut off a mortgage lien by acquiring a subsequent tax title deed from the State. If a *third party* purchased a tax title deed from the State, he obtained a fee simple title cutting off all prior incumbrances, liens and claims. *Robbins* v. *Barron,* 32 Mich. 36; *Sinclair* v. *Learned,* 51 Mich. 335; *Toolan* v. *Longyear,* 144 Mich. 55 (121 Am. St. Rep. 603). It is the settled law of this State that as between the State *and the original owner,* the title to the land sold for nonpayment of taxes becomes absolute in the State and a third-party purchaser under a tax deed acquires a clear and unincumbered title. *Robbins* v. *Barron, supra; Hickey* v. *Rutledge,* 136 Mich. 128; *Morse* v. *Auditor General,* 143 Mich. 610; *Haney* v. *Miller,* 154 Mich. 337.

However, it is well settled in this State that this rule does not apply as against the mortgagee when the mortgagor is the purchaser of the tax deed. There, the rule is that the mortgagor-purchaser has in effect redeemed the land from the tax sale and

the mortgage remains in full force and effect as between him and the mortgagee.

"To preclude any person from making and relying upon a purchase of lands at tax sale, there must be something in the circumstances of the case which imposes upon him a duty to the State to pay the tax, or something which renders it inequitable, as between himself and the holder of the existing title, that he should make the purchase. It was not claimed in this case, so far as the record shows, that there were contract or other relations between Blackwood and Van Vleit that would preclude the latter from buying the former's land for delinquent taxes. If he was precluded, therefore, it must be on the ground that it was his duty to the State to make payment, and that he is not to be suffered to build up a title on this neglect of duty. * * *

"We have looked into the cases relied upon in the opinion, and find that in all of them the party who was held precluded from acquiring a title at a tax sale, was either in possession of the land when the tax was assessed, and upon that ground chargeable with its payment (*Douglas* v. *Dangerfield*, 10 Ohio, 152; *Ballance* v. *Forsyth*, 54 U. S. [13 How.] 18 [14 L. Ed. 32]; *Voris* v. *Thomas*, 12 Ill. 442; *Glancy* v. *Elliott*, 14 Ill. 456); or by contract or otherwise it had become his duty to other parties concerned to make payment: *Chambers* v. *Wilson*, 2 Watts (Pa.), 495." *Blackwood* v. *Van Vleit*, 30 Mich. 118, 121, 122.

In 1905, this rule was again followed under the then-existing tax laws in *Ball* v. *Harpham*, 140 Mich. 661, 668, 669:

"Judge Cooley, in the third edition of his work on Taxation, vol. 2, pp. 964, 965, discussing 'Who may acquire tax titles,' says:

" 'There is a general principle applicable to such cases, which may be stated thus: That a purchase

made by one whose duty it was to pay the taxes shall operate as payment only. He shall acquire no rights as against a third party by a neglect of the duty which he owed to such party. This principle is universal, and is so entirely reasonable and just as scarcely to need the support of authority. Show the existence of the duty, and the disqualification is made out in every instance.'    *    *    *

"Referring to the case of *Blackwood v. Van Vleit,* *supra,* the court say, in *Sands* v. *Davis,* 40 Mich. 14, at page 20:

" 'The case of *Blackwood* v. *Van Vleit,* 30 Mich. 118, holds, in conformity with these views, that there can be no estoppel against purchasing tax titles except against one who had a duty to pay the tax or remove the burden.'

"See, also, *Hain* v. *Robinson,* 72 Iowa, 735; *Jones* v. *Wells,* 31 Mich. 170; *Connecticut Mutual Life-Insurance Co.* v. *Bulte,* 45 Mich. 113; *Maxfield* v. *Willey,* 46 Mich. 252. This question has arisen in a multitude of cases in our own court and elsewhere, and the decisions have turned generally upon the result of the inquiry whether, under the circumstances of the particular case, a duty to pay the taxes rested upon the person buying the tax title growing out of contract or confidential or fiduciary relations."

This principle was again recognized by this court in 1937 in *Ford Heights Land Co.* v. *Schanert* (syllabi), 279 Mich. 693, as follows:

"One who is obligated by contract with another to pay taxes may not, through his own default, obtain an advantage over the other.

"An assignee of vendee's interest under land contract requiring vendee to pay taxes on the property, which assignee covenanted with vendor to perform the contract and, after permitting the taxes to become in default, secured an option of repurchase from tax sale purchaser *held,* to have such option in trust for vendor."

"A mortgage containing covenants of warranty will, as between the mortgagor and mortgagee, pass an after-acquired title. The rule frequently is stated without qualification that the mortgagor is estopped to set up an after-acquired title as against the mortgagee, and that on acquiring title it immediately inures to the benefit of the mortgagee, *the view being taken that in order to create an estoppel no warranty is necessary.*" 21 C. J. p. 1078.

See, also, *Clark* v. *Daniels,* 77 Mich. 26; *Gray* v. *Franks, supra; Caple* v. *Switzer, supra.*

The same rule applies where a grantor who has no title attempts to convey by warranty or covenant of title and subsequently acquires the title which he purported to convey. Each after-acquired title will inure to the grantee or to his benefit by way of estoppel. *Demerse* v. *Mitchell,* 187 Mich. 683; *Donohue* v. *Vosper,* 189 Mich. 78; 21 C. J. p. 1074.

It is important to note that this case arises on a bill in chancery to foreclose the mortgage. The equities are before the court. Defendants have all the rights of an owner to redeem the premises from the foreclosure sale. The statute governing the giving of the deed of sale by the circuit court commissioner, and the effect of such deed, provides:

"Unless the premises described in such deed or any parcel thereof shall be redeemed within the time limited for such redemption as herein provided, such deed shall thereupon as to all parcels not so redeemed become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title and interest which the mortgagor had at the time of the execution of the mortgage, *or at any time thereafter.*" 3 Comp. Laws 1929, § 14372 (Stat. Ann. § 27.1140).

Plaintiffs concede the right of the State to have payment of the unpaid balance on defendants' con-

tract of purchase from the State, and the decree as entered in the chancery court so provides.

There is no such dissimilarity between the present and previous statutes as to establish a law that defendants may take advantage of their own default and their breach of the express covenants in their mortgage. Equity will consider that defendants redeemed the land when they subsequently exercised their right as former owners to match the highest bid at the scavenger sale. Defendants are estopped from claiming an interest in the land in question as against plaintiffs in foreclosure proceedings.

Decree affirmed, with costs to appellees.

BUSHNELL, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred with BOYLES, J. McALLISTER, J., took no part in this decision.